

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0227-16

### CESAR ALEJANDRO GAMINO, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**RICHARDSON, J., delivered the opinion of the Court in which KELLER, P.J., and ALCALA, YEARY, KEEL, and WALKER, JJ. joined. NEWELL, J. concurred in the result. KEASLER, J., filed a dissenting opinion in which HERVEY, J. joined.**

### OPINION

Appellant, Cesar Alejandro Gamino, was convicted of the offense of aggravated assault with a deadly weapon.[1]  The Second Court of Appeals reversed Appellant's conviction and remanded his case for a new trial, holding that the trial court erred by refusing

---

[1] TEX. PENAL CODE § 22.01(a)(2).

Appellant's request for a jury charge on self defense.[2] We agree that Appellant was entitled to a self defense charge. We affirm the judgment of the court of appeals.

*Background*

According to the State's evidence presented at Appellant's trial, around 1:30 a.m. on August 11, 2013, as the bars were closing in downtown Fort Worth, Appellant and his girlfriend, Valerie Rodriguez, were walking to his truck. They passed by a group of three men sitting on a street corner, and Appellant overheard one of them, Mohammed Khan, quote what was purported to be an extremely lewd movie line. Thinking that the comment was directed toward his girlfriend, Rodriguez, Appellant confronted Khan. Khan testified that he told Appellant that they were not talking to Appellant or his girlfriend. According to Khan, Appellant then uttered the words, "I got something for you," walked to the driver's side of his truck, pulled out a gun, and pointed it at the three men. Two off-duty police officers were working security nearby. They testified that they heard Appellant shout "I got something for you," and they saw him with a gun. Appellant was arrested and charged with aggravated assault with a deadly weapon.[3] Khan was arrested for public intoxication.

Rodriguez testified for the defense. She said that she had known Appellant for eight years. After coming back from overseas, Appellant had two back surgeries. She said that he had knee problems and shoulder problems. Rodriguez testified that Appellant was "disabled."

---

[2] *Gamino v. State*, 480 S.W.3d 80, 82 (Tex. App.—Fort Worth 2015).

[3] The State alleged that Appellant intentionally or knowingly threatened Khan with imminent bodily injury while using or exhibiting a deadly weapon. TEX. PENAL CODE § 22.01(a)(2).

On the night in question, she and Appellant had gone out to dinner with friends and then to a dance club. At the end of the evening, as they were heading toward his truck, she said that three men confronted them, and one man threatened her. Rodriguez testified that she feared for her life.

Appellant then gave his version of what happened. He testified that as they were returning to his vehicle they encountered three men. He said that the men threatened him and his girlfriend. He said they threatened to "grab her ass" and "F her if they wanted to," and that they would "kick [his] ass." Appellant said that one of the men stood up and came at him, so when Appellant reached into his vehicle, he grabbed his gun and told the men, "Stop, leave us alone, get away from us." Appellant said that the police then showed up, put him on the ground, and handcuffed him. Appellant testified that after Khan threatened them, he and his girlfriend were scared. Appellant denied saying "I got something for you," and he denied pointing his gun at the men. Appellant testified that because Khan stood up and approached them in an aggressive manner, and because he was disabled, he felt that he and his girlfriend were in danger. Appellant said that he drew his weapon in self defense.

Defense counsel asked the trial court for a self defense jury charge. He argued to the court that there were "two witnesses that got up and testified that they were threatened by Mr. Mohamad Khan[,] . . . [and Appellant] got up and testified himself that he did pull the weapon and that he did so because he felt threatened." The court denied the self defense charge.

The jury found Appellant guilty of aggravated assault with a deadly weapon. Appellant appealed his conviction to the Second Court of Appeals, asserting that he should have received a self defense instruction. The court of appeals agreed with Appellant:

> Viewing the evidence in the light most favorable to Appellant, Appellant reasonably believed his use of force was immediately necessary to protect himself against Khan's use or attempted use of unlawful force, and Appellant produced his gun for the limited purpose of creating an apprehension that he would use deadly force if necessary. We hold that under Appellant's version, his use of a deadly weapon did not constitute the use of deadly force and that Appellant was not disqualified from receiving a self defense instruction notwithstanding the fact he was charged with aggravated assault with a deadly weapon. . . . Accordingly, the trial court erred by not submitting an instruction on self defense.[4]

We granted the State's petition for discretionary review in order to review this holding.

***Appellant Was Entitled to a Self Defense Charge***

"A defendant is entitled to a jury instruction on self defense if the issue [of self defense] is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense.[5] When reviewing a trial court's decision denying a request for a self defense instruction, we view the evidence in the light most favorable to the defendant's requested submission.[6] A trial court errs in denying a self defense instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support

---

[4] *Gamino*, 480 S.W.3d at 90 (citing TEX. PENAL CODE § 9.04).

[5] *Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016) (quoting *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)).

[6] *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

the elements of self defense.[7]

According to Section 9.31 of the Texas Penal Code, a person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force.[8] The use of force against another is not justified in response to verbal provocation alone.[9] Under Texas Penal Code, Section 9.32, a person is justified in using deadly force if he would be justified in using force under Section 9.31, and he reasonably believes that deadly force is immediately necessary to protect himself against another's use or attempted use of deadly force.[10] However, even if a defendant is charged with using or displaying a deadly weapon, deadly force self defense may not apply. Texas Penal Code, Section 9.04, titled "Threats as Justifiable Force," provides as follows:

> The threat of force is justified when the use of force is justified by this chapter. For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.[11]

According to the plain language of the statute, Section 9.04 is not a separate statutory defense;

---

[7] *Shaw v.* State, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007); *Ferrel*, 55 S.W.3d at 591.

[8] TEX. PENAL CODE § 9.31(a).

[9] *Id.* § 9.31(b)(1).

[10] *Id.* § 9.32(a)(1), (2)(A).

[11] *Id.* § 9.04.

rather, it is incorporated into the law of self defense.[12]  In this case, therefore, even though Appellant is charged with using a deadly weapon, if the evidence presented at trial triggers the application of Section 9.04, Appellant would be entitled to an instruction on, non-deadly force self defense under Section 9.31, rather than deadly force self defense under Section 9.32.  As the court of appeals correctly noted, "[i]f Section 9.04 applies, then the use of a gun does not constitute 'deadly force,' and, therefore, [S]ection 9.32 would become inapplicable. If [S]ection 9.04 applies, then the use of the gun would, by default, be the use of 'force' in self defense, and [S]ection 9.31 would be the applicable provision."[13]  Thus, we agree with the court of appeals's conclusion that "Appellant was not disqualified from receiving a self defense instruction notwithstanding the fact he was charged with aggravated assault with a deadly weapon."[14]

In this case, Appellant requested that a self defense charge be given to the jury.  He did not specify whether Section 9.31 or Section 9.32 applied, nor did he specifically mention Section 9.04.  However, as a general rule, the requested charge need only be sufficient "to

---

[12] We give effect to the "plain meaning" of the statute.  *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (We "focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. . . . [T]he text of the statute *is the law*.") (emphasis added).  The first sentence of Section 9.04 states that, "The threat of force is justified when the use of force is justified by this chapter."  Therefore, Section 9.04 is not a "third variety" of self defense.  *See Smith v. State*, No. 04-95-00337-CR, 1997 WL 94151, at *1 (Tex. App.—San Antonio Mar. 5, 1997, pet. ref'd) (mem. op., not designated for publication) (citing *Kirkpatrick v. State*, 633 S.W.2d 357 (Tex. App.—Fort Worth 1982, pet. ref'd)).

[13] *Gamino*, 480 S.W.3d at 87 (citing TEX. PENAL CODE § 9.32).

[14] *Id*. at 90.

bring the request to the trial court's attention."[15]  Because Appellant presented evidence that triggered the application of Section 9.04, and because Section 9.04 is not a separate statutory defense, but is encompassed within Section 9.31 self defense,[16] the trial court should have considered Section 9.04 when assessing Appellant's request for a self defense charge.[17]

The State argues that, because self defense is a "confession and avoidance" justification defense, Appellant was not entitled to a self defense instruction  because he did not admit to threatening the victim with imminent bodily injury.[18]  The State urges that

---

[15] *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996); *see also Carmen v. State*, 276 S.W.3d 538, 542 (Tex. App—Houston [1st Dist.] 2008, pet. ref'd) (noting that "Attorneys and judges familiar with decisions from state appellate courts understand that the shorthand term 'self-defense' is usually all that is needed to convey that the defendant is asserting the defense of one's self, either with deadly force when complainant died or suffered serious bodily injury, or without deadly force when no death or serious bodily injury occurred").

[16] *Smith,* 1997 WL 94151, at *1.

[17] Our law requires that "the judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ."  TEX. CODE CRIM. PROC. art. 36.14.  Logically, therefore, if Section 9.04 is triggered by the evidence presented, and if the defendant requests a self-defense instruction, then Section 9.04 and Section 9.31 would be the "law applicable to the case." Since the facts triggering Section 9.04 and Section 9.31 would necessarily be intertwined, that would seem to require the trial court to include all pertinent statutory language in the self defense instruction and in the self defense application paragraph.  However, the issue of whether the self defense charge in this case should have expressly included Section 9.04 is not before us.  In this case, the trial court erroneously failed to include in the jury charge *any* instruction on self defense.  We therefore do not reach the issue of whether a self defense charge was properly worded.

[18] In *Alonzo v. State*, this Court explained:

Chapter 9 of the Penal Code recognizes certain justifications that, under Section 2.03, are defenses to prosecution.  If there is some evidence that a defendant's actions were justified under one of the provisions of Chapter 9, the State has the burden of persuasion to disprove the justification beyond a reasonable doubt.

*Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011) (internal citations omitted); *see also*

Appellant's admitted display of his weapon was not the equivalent of an admission that he threatened the complainant with imminent harm. We disagree. Appellant asserted that he did not *just* display his gun. Appellant testified that his display of his weapon was accompanied by him telling the complainant and others to "stop," "get away," and "leave us alone." It would have been reasonable, then, for the jury to infer that the words, "*or else* I will have to use this gun to protect us," were implied. And, although it is true that Appellant's version of what happened differed from the version told by the State's witnesses, we agree with the court of appeals that "Appellant was not required to concede the State's version of the events"[19] in order to be entitled to a self defense instruction. Admitting to the conduct does not necessarily mean admitting to every element of the offense. For example, a defendant can "*sufficiently* admit to the commission of the offense" of murder even when denying an intent to kill.[20]

In this case, Appellant was entitled to receive a self defense instruction if there had been some evidence, even if contradicted, that he believed the display of his gun was

---

Tex. Penal Code § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter.").

[19] *Gamino*, 480 S.W.3d at 88.

[20] *Martinez v. State*, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989) (emphasis added) (stating that denial of intent to kill did not preclude self defense when defendant "admitted to pulling out the gun, firing it into the air, and having his finger on the trigger when the fatal shot was fired"); *see also Alonzo,* 353 S.W.3d at 783 (explaining that even under a charge of manslaughter utilizing a recklessness mental state standard: "The Penal Code does not require that a defendant intend the death of an attacker in order to be justified in using deadly force in self-defense.").

immediately necessary to protect himself against the victim's use or attempted use of unlawful force, that his purpose in displaying his weapon was limited to creating an apprehension that he would use deadly force if necessary, and that his conduct was not in response to verbal provocation alone. We find that there was such evidence:

- Appellant testified that the three men said that "they were going to beat me . . . [;]they said they were going to kick my ass."

- Appellant said that he believed that was a threat of deadly force because "it's three of them and I'm one person that's disabled."

- Appellant testified that the victim and his two friends "threatened" his girlfriend: "One individual stood up and came at me. And that was when I reached in my vehicle, I grabbed my weapon, I threw my left hand, I said, Stop, leave us alone, get away from us."

- Appellant said he "felt like [his] life was in danger," and it was "not because of what they said, [but] because of their actions. . . . When he stood up and approached me in an aggressive manner, that was when I drew my weapon. That's when I held it to my side and I held my hand up and said, 'Get back, leave us alone,' and that was when he retreated."

- Although Appellant denied pointing his gun at the victim, he admitted to "pull[ing] a weapon."

Appellant's testimony presented evidence that he produced his gun for the limited purpose of creating an apprehension that he would use deadly force if necessary.[21] There was evidence presented that Appellant reasonably believed his use of force was immediately necessary to protect himself and his girlfriend against Khan's use or attempted use of unlawful force.

---

[21] *Gamino*, 480 S.W.3d at 90.

We agree with the court of appeals that "it was the jury's call whom to believe and what to believe. It was not the trial court's prerogative to preempt the issue because it thought Appellant's version was weak, contradicted, or not credible."[22] Viewing the evidence in the light most favorable to the defendant's requested submission, we hold that the jury should have been given the opportunity to assess whether Appellant's conduct was justified as self defense. We affirm the judgment of the Second Court of Appeals.

DELIVERED:        September 27, 2017

PUBLISH

---

[22] *Id.* at 92 (citing *Shaw*, 243 S.W.3d at 658).