

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0899-18

**PATRICK JORDAN, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SIXTH COURT OF APPEALS BOWIE COUNTY**

**KEASLER, J., filed a dissenting opinion.**

## DISSENTING OPINION

The doctrine of confession and avoidance is often stated in positive terms, that is, in terms of what the defendant should or must do at trial in order to receive his preferred defensive instruction. So a defensive instruction is appropriate only when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.[1]

---

[1] *E.g.*, *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

But as the Court's opinion acknowledges,[2] it can also be defined negatively, that is, in terms of what the defendant should or must not do if he wishes to receive his preferred defensive instruction. So, among other things, a criminal defendant cannot testify that he lacked the culpable mental state necessary for the commission of the alleged crime and simultaneously maintain that, despite the fact that he committed no crime, his conduct was justified.[3] If the defendant claims that he did not have the requisite intent to commit the offense that was alleged, he is "not entitled to an instruction on self-defense."[4]

With that in mind, here is what I consider to be the most crucial part of Jordan's testimony on direct examination:

> Q    Okay. When exactly did you chamber or put a shell in the chamber of the firearm?
>
> A    After about -- I don't know if --.
>
> Q    Was it pretty close to the time he [Royal] fish-hooked you or after?
>
> A    I believe whenever I felt -- as soon as I had got turned around and wrapped up is when I was able to pull it out because it was -- I was bent over and he kind of had me wrapped -- his chest was on the top of my head and he had a hold of one of my arms, but that's when I was able to just wrestle with him a little bit. I was trying to get to a confined space to limit the amount of actions, but that's when I was able to pull out my pistol.

---

[2] *See* Majority Opinion at 2.

[3] *E.g.*, *Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex. Crim. App. 2004) (citing *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999)).

[4] *Id.*

Q      And you didn't accidentally chamber a round, did you?

A      No, sir.

Q      All right. So now you're armed and -- were you armed and ready to fire at that time?

A      Yes, sir.

Q      Or the gun was?

A      Yes, sir.

Q      Could you see anything at that time?

A      No, sir. It was just me and Jordan [Royal].

Q      All right. And did you pull the trigger?

A      Yes, sir.

Q      Why did you pull the trigger?

A      Because at that point, I was honestly scared that -- I know that he was not there for a schoolyard tussle.

And here is what I consider to be the most important part of Jordan's testimony on cross-examination:

Q      . . . Let's talk about the deadly conduct. You're still the same Patrick Jordan?

A      Yes, sir.

Q      This is in Bowie County, Texas?

A      Yes, sir.

Q      It occurred on September 23, 2015?

A    Yes, sir.

Q    That you did then and there knowingly discharge your firearm?

A    Yes, sir.

Q    And you fired it at or in the direction of individuals, namely, Summer Varley and Austin Crumpton?

A    I don't recall that.

Q    Are you denying that you [shot] her, sir?

A    No, sir, not at all.

Q    So you shot her?

A    Yes, sir.

Q    And you fired your weapon when other people were around?

A    Not that I remember.

Q    Who do you remember being out there, sir?

A    Jordan [Royal] and Joshua Stevenson.

Q    You only saw two people out there?  You just told your lawyer that there was five, maybe more.

A    The ones that were on me.

Q    You fired your weapon in the direction of one or more individuals.  Is that correct, sir?

A    Yes, sir.

Q    Those are all the elements that the State has to prove [for] deadly conduct.

The Court points to this latter exchange as some proof that Jordan adequately "confessed" to the offense of deadly conduct and interposed the defense of multiple-assailants self-defense to justify his otherwise-criminal conduct.[5] I disagree.

Without going too far into the weeds of a statutory-construction analysis,[6] if all the State proves in a prosecution under Penal Code Section 22.05(b)(1) is that the defendant knowingly discharged a firearm and, whether he knew it or not, he in fact fired in the direction of another individual, the State will have failed in its burden. To commit deadly conduct under Section 22.05(b)(1), the actor must know, not just that he is engaging in the *actus reus* of discharging a firearm, but also that he is doing so "at or in the direction of" another individual.[7] If he lacks this latter awareness, he is not guilty of that offense.

So, in the confession-and-avoidance context, if the defendant admits that he knowingly discharged a firearm but does not admit that he knew he was firing "at or in the direction of" another individual, he will not have confessed to every element of deadly conduct. He will have confessed only to the *actus reus*; he will not have confessed to the necessary *mens rea* for this offense. Relatedly, if the defendant is charged with knowingly discharging a firearm "at or in the direction of" Arthur, but confesses only to knowingly

---

[5] *See* Majority Opinion at 8.

[6] *But see, e.g.*, *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) ("[W]here otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances.").

[7] *See* TEX. PENAL CODE § 22.05(b)(1).

discharging a firearm at Bob, he will not have confessed to the offense with which he was charged. Even if he claims that he shot at Bob in self-defense, he should not receive a self-defense instruction in a prosecution for knowingly shooting at Arthur. It might be different in a case where the State tries to argue transferred intent,[8] but that didn't happen here.

As I contemplate Jordan's account of the events in question, I cannot agree with the Court that Jordan adequately confessed to knowingly discharging a firearm "at or in the direction of" Varley and Crumpton. On direct examination, Jordan frankly admitted that he intentionally fired his weapon at Royal. But he denied being able to "see anything" else when he and Royal were entangled: "It was just me and [him]." What's more, on cross, Jordan repeatedly denied being aware that he had fired in the direction of other people—including Varley and Crumpton—even if he ultimately conceded that he had, in fact, done so. At best, he admitted some incidental awareness that, when he shot Royal, he was also shooting "at or in the direction of" Joshua Stevenson. But given that the named deadly-conduct complainants were Varley and Crumpton, Jordan's concession as to Stevenson does not give rise to a valid claim of self-defense as to them.

Overall, the tenor of Jordan's defense was not that he knowingly fired at a "mob" because he believed that doing so was immediately necessary to protect himself against the mob's use or attempted use of unlawful force. It was that Jordan knowingly fired at Royal (and perhaps Stevenson) because he believed that doing so was immediately necessary to

---

[8] *See* TEX. PENAL CODE § 6.04(b).

protect himself against Royal's (and perhaps Stevenson's) use or attempted use of force—and, unbeknownst to him, some of his self-defensive gunshots went "at or in the direction of" Varley and Crumpton. On its face, that posture is inconsistent with the argument that Jordan was justified in committing deadly conduct against Varley and Crumpton because he was exercising his right of self-defense. Instead, his testimony was consistent with the simple notion that, because he lacked any awareness that his self-defensive gunshots went in Varley and Crumpton's direction, ultimately, the State could not "prove that any penal-code violation occurred that would require justification."[9] That is not multiple-assailants self-defense. It is the time-honored defense of "You didn't prove your case."

To be sure, there are some parts of Jordan's testimony and defensive posture that come close to adequately confessing to the charged offense. For instance, Jordan affirmed on direct examination that he was "aware that there were five people following [him] out of [the] restaurant." He testified that he considered all five to be "assailants," and that he thought he was getting "mobbed." But, while this testimony might contribute to the reasonableness of Jordan's belief that shooting the gun was immediately necessary, it stops well short of Jordan admitting that he knowingly fired at the "mob," much less Varley and Crumpton, in self-defense. In closing argument, defense counsel argued that Jordan had

---

[9] *Gamino v. State*, 537 S.W.3d 507, 514 (Tex. Crim. App. 2017) (Keasler, J., dissenting).

"admitted everything as far as the elements of the offense goes." But the question in this case is whether the trial judge erred by unduly narrowing Jordan's self-defense instruction. The answer to that question cannot turn on events occurring after the jury was charged. The trial judge cannot be faulted for failing to anticipate a closing argument.

Because Jordan did not admit to harboring the requisite culpable mental state for the particular deadly-conduct offense with which he was charged, I do not think he was entitled to a multiple-assailants self-defense instruction. Therefore, I dissent to the Court's holding that he was.

Filed: February 5, 2020

Publish