

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00593-CR

Ramon Donato **AYALA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 567926
Honorable Michael De Leon, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: September 23, 2020

REVERSED AND REMANDED

A jury convicted Ramon Donato Ayala of assault bodily injury–married. In a single issue, Ayala argues the trial court erred by denying his request for a jury instruction on self-defense. We conclude the trial court erred and the error was harmful. Therefore, we reverse and remand.

### BACKGROUND

On March 10, 2018, Ayala and his wife, Celestina A. Ayala, had an argument that led to a physical altercation. They each called 911 to report the domestic disturbance. San Antonio Police Department officers responded, interviewed Ayala and Celestina separately, observed their

injuries, and arrested Ayala for assault. Ayala was subsequently charged by information with intentionally, knowingly, and recklessly causing bodily injury to Celestina by "pushing" her with his "hand," by "grabbing" her with his "hand," by "pulling" her hair with his "hand and fingers," and by "scratching" her with his "hand." Ayala pleaded not guilty to the charges and the case was tried to a jury.

At trial, Celestina testified that on March 10, 2018, she and Ayala were having a verbal argument on the first floor of their home. Celestina decided to go upstairs to get away from the situation. Ayala followed her, grabbed her by the arm, and turned her around. At this point, Celestina was standing on the second step and Ayala was standing at the bottom of the stairs. Ayala's face was very close to Celestina's face and he was yelling at her. Celestina raised her hand to prevent Ayala from spitting on her face. Celestina added, "I don't know if he thought I was going to hit him because at that time he was trying to provoke me. He was trying to tell me to hit him." While Celestina had her hand up, Ayala pushed her. She fell and hit her back on the wall. She immediately stood up and pushed Ayala. When Ayala pushed her again, Celestina tried to push him back, but he grabbed her arms, and pulled her down to the first floor with him. Ayala then "wrapped his whole hand around my hair and put my head down and was trying to take me to the ground." However, while Ayala was holding Celestina down, she reached up, grabbed his long beard, and pulled it down with both of her hands. Her actions hurt Ayala and he released her. Once released, Celestina went upstairs and called 911. As to her injuries, Celestina testified she sustained a bruise and a scratch on her arm caused by Ayala "pulling me down to the first floor and trying to get me to the ground." Celestina also had a scratch on her leg, which she believed she sustained "during the time [Ayala] was trying to take me down to the ground."

Photographs of Celestina's and Ayala's injuries were admitted at trial. These photographs show scratches on Celestina's left arm and left leg and scratches on Ayala's neck and face.

Ayala testified that on March 10, 2018, he and Celestina were having a verbal argument in their home. They were on the ground floor near the stairs when Celestina walked up the stairs to about the fourth step, turned around, and walked down to the second step. Celestina raised her hand and Ayala thought she was going to slap him. Ayala held up his hand and Celestina slapped him on the hand. Ayala stepped away, but Celestina grabbed his long beard and pulled him back. She also reached out with her other hand and grabbed the other side of his beard. After Celestina grabbed Ayala's beard, she started pulling and shaking him. These actions hurt Ayala, especially because he had a previous neck injury. In response, Ayala grabbed Celestina's wrist and pried one of her hands off his beard. Celestina then grabbed him with the other hand, and Ayala "grabbed the other wrist again and" "finally got her off." Ayala did not know how Celestina obtained the scratches on her arm and leg. He claimed he did not "intentionally scratch" Celestina, nor did he push her, grab her hair, or try to take her to the ground.

At the charge conference, Ayala asked the trial court for an instruction on self-defense. The trial court denied this request. The jury found Ayala guilty of assault bodily injury-married. The trial court sentenced Ayala to twelve months in jail, but suspended the sentence and placed him on probation for twelve months. Ayala appealed.

## DISCUSSION

Ayala argues the trial court committed reversible error by denying his request for a jury instruction on self-defense. "Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Then, if we find error, we analyze that error for harm." *Id*. "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id*. When error exists and the defendant has preserved the error by properly objecting, we reverse if we find "some harm" to the defendant's rights. *Id*.

Under Texas law, "a defendant is entitled to an instruction on any defensive issue that is raised by the evidence," "[r]egardless of the strength or credibility of the evidence." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). Generally, a defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense. *Id*.

Self-defense is a justification defense. *Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011). "[A] person is justified in using force against another when and to the degree [he] reasonably believes the force is immediately necessary to protect [himself] against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42). When the evidence is sufficient to raise an issue regarding the use of force in self-defense, the jury must decide the issue. *See Gamino v. State*, 537 S.W.3d 507, 512-13 (Tex. Crim. App. 2017) ("It was not the trial court's prerogative to preempt the issue [of self-defense] because it thought [the defendant's] version was weak, contradicted, or not credible."); *VanBrackle v. State*, 179 S.W.3d 708, 714 (Tex. App.—Austin 2005, no pet.) ("Whether the events in question actually transpired in the manner described by the defensive testimony and whether [the defendant's] conduct was reasonable under the circumstances are fact issues to be determined by a jury.").

Self-defense is classified as a confession and avoidance defense because it requires the defendant to admit to his otherwise illegal conduct. *Jordan*, 593 S.W.3d at 343. "In order to be entitled to a charge on self-defense, the defendant is essentially required to admit committing the conduct giving rise to the indictment." *Withers v. State*, 994 S.W.2d 742, 745 (Tex. App.—Corpus Christi 1999, pet. ref'd). However, "[a]dmitting to the conduct does not necessarily mean admitting to every element of the offense." *Gamino*, 537 S.W.3d at 512; *see also Ebikam v. State*, PD-1199-

18, 2020 WL 3067581, at *1-3 (Tex. Crim. App. June 10, 2020) (not designated for publication) (explaining why the admission of every element of the charged offense is not necessarily required and reconciling prior opinions). A defendant is "not required to concede the State's version of the events in order to be entitled to a self-defense instruction." *Gamino*, 537 S.W.3d at 512 (internal quotations omitted). "For example, a defendant can *sufficiently* admit to the commission of the offense of murder even when denying an intent to kill." *Id*. (emphasis in original). A defendant is entitled to a jury instruction on self[-]defense if the issue is raised by the evidence, "whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Id*. at 510. This is so "because the jury may accept or reject all or a part of any witness's testimony and choose to reject portions of testimony that are contradicted by other evidence." *Kemph v. State*, 12 S.W.3d 530, 532 (Tex. App.—San Antonio 1999, pet. ref'd). "When reviewing a trial court's decision denying a request for a self[-]defense instruction, we view the evidence in the light most favorable to the defendant's requested submission." *Gamino*, 537 S.W.3d at 510.

<u>*Did the Trial Court Err by Denying a Self-Defense Instruction?*</u>

Ayala contends that he was entitled to a self-defense instruction because the evidence presented at trial raised the issue of self-defense for the jury to determine. Ayala further contends that in this case a rational jury could have found (1) that he reasonably believed that the use of force was necessary, and (2) that he sufficiently admitted to the charged conduct because he testified that he grabbed Celestina with his hand.

At trial, Ayala testified as follows:

Counsel:    What happened next []?

Ayala:    We just – I don't know, just arguing, and I just saw her hand go like, you know – go around, and I threw my hand up (Indicating.)

Counsel: So she raised her hand?

Ayala: *She went to slap me.*

Counsel: *So that's what you thought?*

Ayala: *Yes, sir.*

Counsel: So she was moving her hand pretty fast?

Ayala: Yes, sir.

Counsel: And what did you do in response to that?

Ayala: I put my hand up and she slapped me on the hand.

Counsel: And what happened next?

Ayala: I stepped away.

Counsel: And what did Celestina do?

Ayala: *Grabbed on to the long beard I had and pulled me back and then reached out with the other hand and grabbed this side.* And then, you know, continued.

….

Counsel: So what happened after Celestina grabbed your beard?

Ayala: She just started – *I grabbed her wrist because she started, like, pulling, you know, just dead weight and shaking.* And I've got the neck injury. And finally just – I guess her right arm, my left, I took it off, and I tried to take this one off, but I let go. *And then she went down here and grabbed down here, you know* (Indicating.)

Counsel: So once you pried one of her hands off, she grabbed with the other hand?

Ayala: Yes, sir.

Counsel: And did you – had you pushed her prior to this?

Ayala: No, sir.

Counsel: Okay. So what happened after when she grabbed onto your beard again?

Ayala: *I grabbed the other wrist again and, you know, finally got her off.* Once I got her off, created distance – once I created a distance, it stopped.

- 6 -

Counsel:        That was the last physical interaction with her?

Ayala:          That was it.

(Emphasis added).

We agree the trial evidence raises the issue of whether Ayala reasonably believed the use of force was immediately necessary to protect himself against Celestina's use of force. According to the above-quoted testimony, Ayala thought Celestina was going to slap him and he put up his hand to prevent her from hitting him. Celestina then slapped Ayala's hand. Ayala further testified that Celestina "grabbed onto" his beard and "pulled [him] back." While Celestina's testimony differed from Ayala's in many respects, even she indicated that Ayala may have thought she "was going to hit him." Celestina also admitted that she grabbed Ayala's beard, although not until after Ayala had "tried to take her to the ground." We conclude some evidence existed from which a rational jury could have found that Ayala's use of force was immediately necessary to protect himself from Celestina's use or attempted use of unlawful force. *See Alonzo*, 353 S.W.3d at 779, 783 (recognizing that the defendant's testimony that the victim "attacked him with . . . a metal object, that the two engaged in a struggle," that the victim "attacked him with [a] spike," that they struggled for control of the spike, and that the victim "got a hole in his chest" that "must have happened during the struggle" was sufficient to raise the issue of self-defense). Based on the evidence presented in this case, the jury should have been given the opportunity to assess if Ayala's conduct was justified by self-defense. *See Gamino*, 537 S.W.3d at 513.

The State argues Ayala was not entitled to a self-defense instruction because Ayala "flatly den[ied]" the charged conduct in his testimony. Although self-defense is a confession and avoidance defense, Ayala was not required to concede the State's version of events or admit to every element of the offense to be entitled to the requested instruction. *See id*. at 512. In his trial testimony, Ayala denied "intentionally scratching" or "pushing" Celestina or "grabbing" her hair,

- 7 -

but he did admit to "grabbing" her with his hand, which was one of the manners of assault alleged in the charging instrument. Viewing the evidence in the light most favorable to the requested instruction, Ayala sufficiently admitted to committing the conduct charged in the information. *See Kemph*, 12 S.W.3d at 532-33 (concluding a defendant charged with resisting arrest was entitled to a multiple assailant self-defense instruction when he denied kicking and biting the officers as alleged by the State, but he admitted to using force by struggling against the officers); *Torres v. State*, 7 S.W.3d 712, 716 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (rejecting the State's argument that the trial court erred in giving a self-defense instruction when the defendant denied causing bodily injury to the victim, but admitted to grabbing her by her hair, possibly hitting her in the face, struggling with her, and pushing her away); *Withers*, 994 S.W.2d at 746 (holding the defendant was entitled to a self-defense instruction when she "specifically denied the indicted conduct" of grabbing the victim's neck, pulling his ears, pushing him to the floor, or applying excessive force to his shoulder, but "she did admit to applying force to [the victim's] back in order to keep him under control on the floor.").

We conclude the trial court erred by denying the requested self-defense instruction.

### *Did the Error Harm Ayala?*

Having concluded the trial court erred in denying Ayala's request for a jury instruction on self-defense, we must determine if Ayala was harmed by the error. Because Ayala preserved the error by properly objecting, we must reverse if we find "some harm" to his rights. *See Jordan*, 593 S.W.3d at 347; *Ngo*, 175 S.W.3d at 743. "Some harm" means actual harm and not just a theoretical complaint. *Jordan*, 593 S.W.3d at 347. "To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information." *Id.*

During voir dire, both the prosecutor and Ayala's counsel questioned the venire on self-defense. In his opening statement, Ayala's counsel referred to self-defense. The evidence against Ayala was not overwhelming. The only witnesses to the incident, Celestina and Ayala, provided different versions of it in their trial testimony. The evidence showed that both Celestina and Ayala called 911 immediately after the incident, and the jury listened to these audio recordings. In fact, during deliberations, the jury asked to listen to the 911 calls again, and the trial court granted this request. The photographs admitted at trial showed that both Celestina and Ayala sustained injuries during the incident. In closing arguments, the prosecutor emphasized the absence of a self-defense instruction, arguing, "This is not a case about self-defense. . . . in fact, in the jury instructions, the Charge of the Court that the judge just read to you, there's nothing that indicates self-defense."

The trial court's charge instructed the jury: "Now, if you find from the evidence beyond a reasonable doubt that" Ayala "intentionally, knowingly, or recklessly cause[d] bodily injury" to Celestina "by pushing" her with his hand, "or grabbing" her with his hand, "or pulling [her] hair" with his hand and fingers, "or scratching" her with his hand, then you "will find [Ayala] guilty of the offense of assault causing bodily injury." In his testimony, Ayala admitted that he grabbed Celestina with his hand twice, each time after she grabbed his beard. If the jury's verdict was based on a finding that Ayala grabbed Celestina with his hand, then it should have had the opportunity to determine if Ayala's conduct was justified by self-defense. Nevertheless, the charge given in this case prevented the jury from considering the issue of self-defense.

After considering the jury charge, the contested issues, the weight of the probative evidence, the arguments of counsel, and the other relevant information, we conclude the denial of a self-defense instruction caused "some harm" to Ayala's rights. *See Jordan*, 593 S.W.3d at 348 (recognizing the defendant was harmed by the refusal to give a defensive instruction when "[t]he

difference between the instructions that were given and those that should have been given is the difference between foreclosing self-defense and allowing fair consideration of it.").

## CONCLUSION

Because we conclude that the trial court erred in denying Ayala's request for a self-defense instruction and that Ayala was harmed by the error, we reverse the judgment and remand this case to the trial court for further proceedings consistent with our opinion.

Irene Rios, Justice

Do not publish