# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00081-CR

---

**Manxfred Jose Gonzalez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 18-05107-1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

I believe the evidence in this case entitled Manxfred Jose Gonzalez to his requested instructions on necessity, confinement as justifiable force, and protection of life or health. Because the Court concludes otherwise, I dissent.

"A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense." *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013) (citing *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008)). "This rule is designed to ensure that the jury, not the judge, decides the credibility of the evidence." *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g); *Kuhn v. State*, 393 S.W.3d 519, 532 (Tex. App.—Austin 2013, pet. ref'd). The defendant need not testify to raise a defensive issue, and a defense may be raised by evidence from any source, including

witnesses called by the State. *See Smith v. State*, 676 S.W.2d 584, 585, 587 (Tex. Crim. App. 1984); *Davis v. State*, 490 S.W.3d 268, 275 (Tex. App.—Fort Worth 2016, pet. ref'd); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). We view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). "A trial court errs in denying a [defensive] instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of [the defense]." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017).

Each of Gonzalez's requested instructions require evidence of a reasonable belief by Gonzalez that his conduct was immediately necessary to avoid imminent harm. *See* Tex. Penal Code §§ 9.03, .22, .34; *Kenny v. State*, 292 S.W.3d 89, 101 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *see also Smith v. State*, 352 S.W.3d 55, 71 (Tex. App.—Fort Worth 2011, no pet.). The Penal Code defines "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code § 1.07(a)(42). The Penal Code defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *Id*. § 1.07(a)(25). The Penal Code does not define "imminent," but the Court of Criminal Appeals has defined "imminent" as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016). "Thus, imminent harm is harm that is ready to take place—harm that is coming in the very near future." *Id*. "Logically, then, if conduct is 'immediately necessary' to avoid harm that is imminent, that conduct is needed right now." *Id*. "In most cases, whether a defendant was prompted to act by a reasonable belief is a question for the trier of fact."

*Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App.—Fort Worth 1997, no pet.). "A defendant's belief that conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as a matter of law, however, if undisputed facts demonstrate a complete absence of evidence of immediate necessity or imminent harm." *Id*.

In this case, there is not a "complete absence" of such evidence. The evidence showed that on the night of September 19, 2018, Amber Estrella had been drinking with Gonzalez at their third-floor apartment in Round Rock. As the night went on, Estrella became upset and "wanted to get up and leave." Estrella testified that when she becomes upset, she likes to "drive deep in Austin." Estrella estimated that she "probably drank at that point like ten, twelve shots" of vodka and that she was "definitely" impaired and was throwing up. As Estrella got up to leave, Gonzalez appeared "very concerned" and told her "to sit down, that I'm drunk." Estrella "kept trying to leave while pushing him out of the way or trying to get him out of my way, but he would try to—he took my keys, he took my phone. And he kept—he grabbed me from my shoulders and he pushed me on the bed and he was telling me you're drunk, you need to calm down." When Gonzalez took the car keys from Estrella, this made her angrier. Estrella tried to leave the apartment, but Gonzalez positioned himself between her and the doorway and prevented her from leaving. Estrella and Gonzalez proceeded to fight as Estrella attempted repeatedly to leave the apartment and Gonzalez continued to prevent her from leaving. Estrella testified that in her condition that night, she posed a threat to herself and others by attempting to drive and that Gonzalez's actions prevented her from doing so. Defense counsel asked Estrella, "In your review of the actions that occurred, but for [Gonzalez's] actions would you have gone out and driven a car in what you have already said you were intoxicated?" Estrella responded, "If he didn't do what he did, I probably would have gotten myself hurt, put myself in jail or hurt

3

a family, correct." Defense counsel then asked, "And his restraining you was something necessary to prevent that [from] happening?" Estrella answered, "Absolutely."

Viewed in the light most favorable to Gonzalez's requested instructions, I would conclude that this evidence raises an issue as to whether Gonzalez reasonably believed that his conduct in restraining Estrella was immediately necessary to prevent Estrella from leaving the apartment and presenting a risk of imminent harm to herself or others. The jury could reasonably infer that Estrella's level of impairment was readily apparent to Gonzalez, who had been with her while she was drinking in their apartment, and that he reasonably believed that if he allowed her to leave the third-floor apartment in that condition, she risked imminent harm to herself or others. Gonzalez took Estrella's car keys, positioned himself between Estrella and the doorway, and fought with her to prevent her from leaving. Gonzalez could have reasonably believed that these actions were necessary in the moment to prevent Estrella from harming herself or others. Estrella acknowledged this when she testified that if Gonzalez had not prevented her from leaving the apartment, she "probably would have gotten myself hurt, put myself in jail or hurt a family." Moreover, Estrella testified that she attempted repeatedly to leave the apartment and fought violently with Gonzalez as he tried to prevent her from leaving. The jury could infer from this evidence that Estrella was erratic and aggressive due to her intoxication and that Gonzalez reasonably believed that if he did not restrain Estrella immediately, she would harm herself or others as a result of her mental and physical state.

In determining whether a defense is supported by the evidence, "a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). It is a matter of common sense that when an intoxicated person goes out in

4

public, she can harm herself or others.[1] The evidence summarized above supports findings that Gonzalez knew that Estrella had been drinking excessively and was throwing up; he knew that she was upset, agitated, and violent; he knew that she intended to drive; and he knew that she was attempting to leave the apartment in an extremely intoxicated state. Gonzalez could have reasonably believed that these circumstances made it immediately necessary for him to prevent Estrella from leaving the apartment and causing imminent harm to herself or others. Such a belief would not be "unreasonable as a matter of law." *See Brazelton*, 947 S.W.2d at 649. Whether Gonzalez reasonably believed his actions were immediately necessary to avoid imminent harm was a question of fact for the jury to decide. *See id.*

I conclude on this record that the district court erred in denying Gonzalez his requested instructions on necessity, confinement as justifiable force, and protection of life or health. *See, e.g.*, *Pennington v. State*, 54 S.W.3d 852, 858 (Tex. App.—Fort Worth 2001, pet. ref'd) (defendant entitled to necessity instruction when she took drugs from ex-boyfriend's house to prevent ex-boyfriend's child from seeing his father use drugs); *Brazelton*, 947 S.W.2d at 649 (defendant entitled to necessity instruction when she took possession of drugs that were planted in her home because she saw police car parked near her home and did not want her children to see her arrested); *Spakes v. State*, 891 S.W.2d 7, 8, 11 (Tex. App.—Amarillo 1994) (defendant entitled to necessity instruction when he escaped from prison with other inmates after they told

---

[1] In fact, public intoxication is a criminal offense because of the danger an intoxicated person can present to herself or others. *See* Tex. Penal Code § 49.02(a) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."); *see also id*. § 1.07(a)(40) (defining public place as "any place to which the public or a substantial group of the public has access," including "common areas of . . . apartment houses"); *State v. Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) ("[F]or the element of danger, it is sufficient that the person merely rendered himself or others subject to potential danger.").

him that they would cut his throat if he did not join them), *aff'd*, 913 S.W.2d 597 (Tex. Crim. App. 1996); *see also, e.g.*, *Wright v. State*, No. 05-09-00421-CR, 2010 WL 2560536, at *5 (Tex. App.—Dallas June 28, 2010, no pet.) (mem. op., not designated for publication) (defendant entitled to necessity instruction when he drove while intoxicated after his wife, who had been driving car, passed out); *Juarez v. State*, No. 12-08-00009-CR, 2009 WL 768595, at *4 (Tex. App.—Tyler Mar. 25, 2009) (mem. op., not designated for publication) (defendant entitled to necessity instruction when he bit finger of person who was suffocating him), *aff'd*, 308 S.W.3d 398 (Tex. Crim. App. 2010). Accordingly, I would reverse the district court's judgment of conviction and remand for a new trial. Because the Court does not, I dissent.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Filed:   February 26, 2021

Do Not Publish