

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00494-CR

Harvey **GUTIERREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 620144
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: January 25, 2023

REVERSED AND REMANDED

A jury convicted appellant Harvey Gutierrez of making a terroristic threat, a Class B misdemeanor, and the trial court assessed punishment at confinement in the county jail for one-hundred and eighty days, probated for twelve months' community supervision. TEX. PENAL CODE ANN. § 22.07(a)(2), (b) (providing that a "person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury"). In one issue, Gutierrez complains that the trial court erred by refusing to give a jury instruction on self-defense. We reverse and remand.

# I. Background

Gutierrez was charged by information with making a terroristic threat to his former brother-in-law, Jose Lopez. The alleged threat was made in front of the home of Lopez's mother and Gutierrez's former mother-in-law, Elsa Esquivel-Lopez. The incident stemmed from Gutierrez trying to pick up his minor son from Esquivel-Lopez's care. At trial, the jury heard from Lopez, Esquivel-Lopez, and two San Antonio Police Department ("SAPD") patrol officers — Marissa Garcia and Nathan Wood.

Lopez testified that, on the day in question, Gutierrez went to Esquivel-Lopez's home to pick up his minor son. Lopez happened to be at Esquivel-Lopez's home when Gutierrez arrived, and the two met at the front door. Lopez recalled informing Gutierrez that, based on his understanding of the child-custody order, Gutierrez was not entitled to have custody of his son on the day in question. Gutierrez then, according to Lopez, stated, "Like I told [Magaly,] your sister, if anybody came between me and my son . . . I would f--- them up." Lopez retorted "Well, you're not going to get your son according to the courts. I guess, well, f--- me up." After these words were exchanged, Lopez observed Gutierrez go to his truck and "g[e]t a machete; and that's when [Lopez] went inside [his] mom's house, locked the door, [and] told her to call the police." Lopez testified that he went into his mother's home because he "felt threatened by the machete." Lopez was afraid Gutierrez would cause "physical harm with the machete" to the home's occupants, including Gutierrez's own son. After Lopez entered his mother's home, Gutierrez "kept verbally abusing [him and] saying a bunch of stuff as far as I'm going to get my kid. Nobody comes . . . between me and my son." Gutierrez also screamed, "Come outside. I'm going to f--- you up. Let's see how much of a man you are. Stop hiding behind your mom . . . always hiding behind females or behind closed doors." Gutierrez also banged and kicked the door. Lopez cursed back to Gutierrez, "F--- you. You're not going to get your son."

Esquivel-Lopez testified that she was caring for her grandchildren, including her daughter Magaly's and Gutierrez's son, on the day in question. Magaly had instructed Esquivel-Lopez not to turn over her son to Gutierrez. Esquivel-Lopez overheard Lopez and Gutierrez speaking to each other in English, which she does not understand, but she nevertheless described Gutierrez's mood as angry. She testified that, during the episode, Gutierrez kicked her front door and destroyed a door decoration. Esquivel-Lopez further testified that she witnessed Gutierrez retrieve a machete from his pickup truck, return to her front door with it, and "wanted for [Lopez] to go out."

Officer Garcia testified that she responded to a call placed by Magaly to Esquivel-Lopez's home. When Officer Garcia arrived, she observed Gutierrez standing next to a vehicle parked in the roadway. Officer Garcia surmised that Gutierrez was upset based on his yelling toward the house, pacing, and sweating.

Officer Wood arrived after Officer Garcia. Officer Wood testified that he spoke with Gutierrez, whom he described as "disheveled[,] . . . very sweaty, kind of agitated, and . . . speaking aggressively to officers." The State offered, and the trial court admitted, video footage from Officer Wood's body-worn camera ("bodycam"). In the video footage, Gutierrez denies kicking at Esquivel-Lopez's front door. When asked to explain what transpired, Gutierrez demonstrates how Lopez strutted toward him while placing his right hand on his hip. When Officer Wood asks whether Lopez had a weapon, Gutierrez responds, "I don't know. Like I said, he's in the military." Lopez's movement prompted Gutierrez to ask Lopez, "What are you going to do?" It also prompted Gutierrez to retrieve a machete from his pickup. Gutierrez specifically recalled, "I grabbed [the machete] for like two seconds and then I threw it." Gutierrez further states that it was Lopez who threatened him by telling Gutierrez, "I'm going to f--- you up . . . I've been waiting for me to f--- you up." Gutierrez tells Officer Wood that Lopez has a "violent, criminal history" and that Lopez's family "starts fights with everyone in the neighborhood." After Officer Wood arrests

- 3 -

Gutierrez and on the patrol car ride to the police station, Gutierrez reiterates that "they're threatening me. Why aren't they getting arrested? They have guns!"

During the jury charge conference, Gutierrez's counsel requested a self-defense instruction by specifically asking:

> GUTIERREZ: Your Honor, everything is fine; but I do have an addition I would like to move the Court about, and that's the issue of self-defense.
>
> The way — from our perspective, if you look at the body cam from the last officer, Mr. Gutierrez says that Jose Lopez had a handgun. And so he pulls a machete in defense would be our argument, but only briefly.
>
> So I'm just making the record clear that would be one addition that the defense asks for.
>
> STATE: Your Honor, we're not going to oppose this addition at this time due to the legal nature of these kind of additions. We feel that it would be necessary for the State to not oppose this being added to the charge.
>
> COURT: The first witness, Jose Lopez, didn't testify as to a gun. Was that asked?
>
> GUTIERREZ: No, it was not asked.
>
> STATE: We did not ask if he had anything in his hand, Judge.
>
> COURT: And the officers didn't talk to Mr. Lopez, either?
>
> STATE: They did speak to him, Judge.
>
> GUTIERREZ: Yes, they did.
>
> COURT: Other than that, other than the assertion by the defendant, there's no mention of a gun; is that correct?
>
> GUTIERREZ: Correct.
>
> COURT: I don't see how it applies at all. And if he did have a gun, the defendant's weapon wouldn't have done much good.
>
> GUTIERREZ: Well, I think that's part of —
>
> COURT: And that's not even — you know, that's — I mean, that had nothing to do with the issue. But I certainly would not want to face a gun with a machete in my hands; or I would make sure that there was at least 10 feet away, if not more. But, anyway, that request is denied. Thank you.

Ultimately, the jury convicted Gutierrez of making a terroristic threat, a Class B misdemeanor. The trial court assessed punishment at confinement in the county jail for one-hundred and eighty days, but in lieu of confinement, it placed Gutierrez on community supervision for twelve months. Gutierrez timely appeals from his judgment of conviction and sentence.

## II. DISCUSSION

Gutierrez's sole issue complains that the trial court erred by refusing to give a jury instruction on self-defense.

### A. Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we determine whether error occurred; if so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id*. at 731–32. The standard of review for jury-charge error depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). On this record, it is clear that both the trial court and the State understood Gutierrez's request for a self-defense instruction; nonetheless, the trial court refused it. Therefore, Gutierrez preserved his jury-charge complaint, and we will review any error for "some harm." *Id*.; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.15; *Francis v. State*, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000).

A defendant is entitled to a self-defense instruction when that defensive issue is raised by the evidence, "whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). In reviewing the denial of a requested self-defense instruction, we view the evidence in the light most favorable to the requested submission to determine whether evidence from any source will support the elements of the defense. *Id*.; *see also Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013) ("[E]ven a minimum quantity

of evidence is sufficient to raise a defense as long as the evidence would support a rational jury finding as to the defense.").

**B.      Applicable Law**

A person commits the offense of making a terroristic threat if he threatens to commit any offense involving violence to any person with intent to place any person in fear of imminent serious bodily injury.  TEX. PENAL CODE ANN. § 22.07(a)(2).  Section 9.04 of the Texas Penal Code is titled "Threats as Justifiable Force."  *Id*. § 9.04.  It provides:

> The threat of force is justified *when the use of force is justified by this chapter*.  For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

*Id*. (emphasis added).  Section 9.04 is not a separate statutory defense; rather, it is incorporated into the law of self-defense.  *Gamino*, 537 S.W.3d at 510.  The law of self-defense includes Section 9.31, which provides that "a person is justified in using force against another when and to the degree [he] reasonably believes the force is immediately necessary to protect [himself] against the other's use or attempted use of unlawful force."  TEX. PENAL CODE ANN. § 9.31(a); *see also Gamino*, 537 S.W.3d at 510.  The use of force against another is not justified in response to verbal provocation alone.  *Id*. § 9.31(b)(1).  Section 9.04 may apply to the offense of making a terroristic threat.  *See Jaimes v. State*, No. 03-96-00230-CR, 1997 WL 420978, at *3 (Tex. App.—Austin July 24, 1997, pet. ref'd) (not designated for publication) (observing that "Section 9.04 was inartfully written" but noting that its "application in justification when a defendant is prosecuted for the offense of making threats 'by the production of a weapon' is comprehensible.").

C.     **Merits Analysis**

Gutierrez references *Gamino*, 537 S.W.3d at 510–12, in support of his contention that the trial court reversibly erred by refusing his request for a self-defense instruction in the jury charge. The State makes only a single, passing reference to *Gamino*. We find *Gamino* instructive.

In *Gamino*, the complainant testified that the defendant and his girlfriend walked by him and two friends. *Id*. at 508. The defendant, according to the complainant, overheard an innocent conversation and mistook it as a threat to his girlfriend. *Id*. The defendant then stated, "I got something for you," walked to the driver's side of his pickup truck, pulled out a gun, and pointed it at them. *Id*. The defendant's recollection varied significantly from that of the complainant. The defendant testified that the complainant and his two friends threatened to "grab [his girlfriend's] ass," "F her if they wanted to," and "kick [his] ass." *Id*. at 509. The defendant recalled that one of the men stood up and came at him, the defendant then reached into his vehicle, grabbed his gun and told the men, "stop, leave us alone, get away from us." *Id*.

The trial court denied the defendant's request for a self-defense instruction. *Id*. The Second Court of Appeals concluded that the trial court's denial constituted reversible error, and the Texas Court of Criminal Appeals affirmed. *Id*. at 509, 512–13. The Texas Court of Criminal Appeals found that there had been some evidence, even if contradicted, that the defendant believed the display of his gun was immediately necessary to protect himself against the complainant's use or attempted use of unlawful force, that the defendant's purpose in displaying his weapon was limited to creating an apprehension that he would use deadly force if necessary, and that his conduct was not in response to a verbal provocation alone. *Id*. at 512. In reaching its decision, the high court showcased, among other things, the defendant's testimony that (1) the three men said that "they were going to beat me . . . [;] they said they were going to kick my ass;" (2) he believed there was a threat of deadly force because "it's three of them and I'm one person that's

disabled;" and (3) he "felt like [his] life was in danger," and it was "not because of what they said, [but] because of their actions." *Id*.

In this case, Gutierrez states, at varying points on Wood's bodycam footage, that (1) Lopez strutted toward him while placing his right hand on his hip; (2) Lopez has a "violent, criminal history"; (3) Lopez told Gutierrez, "I'm going to f--- you up . . . . I've been waiting for me to f--- you up"; (4) "they're threatening me"; (5) Gutierrez did not know whether Lopez had a gun but that Lopez is "in the military"; and (6) "they have guns." As *Gamino* explains, a self-defense instruction is warranted when a defensive issue is raised by the evidence — even evidence that the trial court thinks is weak, contradicted, or lacks credibility. 537 S.W.3d at 510. In light of the applicable standard of review, we conclude that Gutierrez's statements, captured on Wood's bodycam, warranted inclusion of the self-defense jury instruction that he sought.

Instead of addressing *Gamino*, the State, for the first time on appeal, contends that the trial court did not err in refusing to include a self-defense jury instruction because Gutierrez's "retreat" to his pickup truck demonstrates that his brandishing of the machete was not "immediately necessary" as contemplated by Section 9.31(a) of the Texas Penal Code. As authority, the State references *Henley v. State*, 493 S.W.3d 77 (Tex. Crim. App. 2016). We find the State's argument unpersuasive and its reliance on *Henley* misplaced.

In *Henley*, the defendant was convicted of misdemeanor assault causing bodily injury to a family member. *Id*. at 81. On appeal, the defendant complained that the trial court erred in excluding evidence that he sought to introduce in support of his claim of defense of a third person. *Id*. Specifically, the defendant "claimed that he was justified in pulling his ex-wife out of her car by her hair, punching her in the face several times (resulting in two severe black eyes and several cuts and bruises), and hitting her head against the concrete driveway, because he was concerned that his ex-wife was not a fit parent and wanted to protect his two sons from the possibility of being

harmed at some future time by people who were not present at the time of the assault." *Id*. at 81–82. The issue in *Henley* relates to the admissibility of evidence, not charge error. *Id*. at 82–83. In this case, Gutierrez's statements were captured by Officer Wood's bodycam, which the State proffered into evidence.

Moreover, the State's argument that Gutierrez is precluded from a self-defense instruction because he "retreated" fails under the applicable standard of review, which requires us to review the evidence in the light most favorable to the requested self-defense instruction. *See Gamino*, 537 S.W.3d at 507. Although Esquivel-Lopez testified that she witnessed Gutierrez retrieve a machete from his pickup truck and return to her front door with it, Gutierrez's statements on Officer Wood's bodycam footage are subject to a different interpretation. In it, Gutierrez states that he possessed the machete "for like two seconds." Further, Gutierrez does not indicate whether he returned to Esquivel-Lopez's front door with the machete. The State fails to direct us to any authority that permits us to deviate from the applicable standard of review.

Viewing the evidence in the light most favorable to Gutierrez, there is some evidence that the above-described circumstances imposed a threat of bodily harm to Gutierrez for which it was immediately necessary for Gutierrez to protect himself. *See id.* at 510; *see also* TEX. PENAL CODE ANN. § § 9.04, 9.31(a). Therefore, the trial court erred by refusing Gutierrez's requested self-defense instruction under Sections 9.04 and 9.31.

**D.    Harm Analysis**

"Some harm" means "any harm, regardless of degree," *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986), but it also means "actual harm and not merely a theoretical complaint," *Jordan*, 593 S.W.3d at 347. To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information. *Jordan*, 593 S.W.3d at 347.

We conclude that the record in this case demonstrates some harm. In his statement captured on Officer Wood's bodycam footage, Gutierrez states that Lopez was the initial instigator and aggressor. Although the jury had to decide which version of events to believe — Lopez and Esquivel-Lopez's or Gutierrez's — even if it had believed Gutierrez's version, it could have convicted him under the jury charge that it received. *See Gamino v. State*, 480 S.W.3d at 91 (Tex. App.—Fort Worth 2015), *aff'd* 537 S.W.3d 507, 508 (Tex. Crim. App. 2016) ("Under the charge given to the jury, Appellant lost under both versions because Appellant's use of a gun constituted the unwarranted use of deadly force. Nothing in the charge provided that Appellant's conduct might have been justified or excused for any reason."); *see also Windham v. State*, No. 02-19-00063-CR, 2021 WL 386951, at \*16 (Tex. App.—Fort Worth Feb. 4, 2021, no. pet.) (mem. op., not designated for publication) (finding some harm where a defendant's entire defense was built around his justification based on self-defense and defense of his sons; and, in light of conflicting versions of an event, the jury still could have convicted the defendant regardless of which version it believed). In closing argument, the State asserted that Gutierrez had two choices when Lopez denied him custody of his son — peacefully accept or "take action" in "the worst possible way." In other words, Gutierrez had no excuse. Accordingly, we hold that Gutierrez suffered some harm, and we sustain his sole issue.

## III. CONCLUSION

We reverse the judgment of the trial court and remand the cause for a new trial.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH