**Affirmed and Majority Opinion and Concurring Opinion filed August 8, 2023**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00461-CR

---

**GORGE LUIS OLMOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 84354-CR**

---

## MAJORITY OPINION

Appellant, Gorge Olmos, appeals his conviction for aggravated assault that resulted in his twenty-year prison sentence. In three issues, appellant complains that the trial court reversibly erred when it precluded appellant from offering evidence of alleged child pornography on complainant's cellular phone, denied appellant's motion for new trial based on newly discovered evidence, and refused appellant's request for a self-defense instruction. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted appellant Gorge Olmos, of aggravated assault of the complainant on February 4, 2018. The jury assessed punishment at imprisonment for 20 years.

Complainant, deceased, was Javier Lopez, Sr., father to Leonardo Lopez and Javier Lopez Jr. Javier Sr. was the owner of the restaurant "Emily's" where he was found dead in the early morning hours of February 4, 2018.

On February 3, Leonardo closed Emily's around 9:00 p.m. and went home to take a shower. He dropped Javier Sr. off at a party at Julia Gomez's house and returned home until he was picked up by his older brother, Javier Jr. After running errands with Javier Jr. in Houston, around 2:00 a.m. (February 4), the brothers went to check on their father at Julia Gomez's house party. Javier Sr. was not ready to leave, so Javier Jr. went back to his own home and Leonardo went back to his home. At around 4:00 a.m. Leonardo picked up his father and Leonardo's new twenty-year-old friend, appellant. Leonardo offered appellant a ride to appellant's residence but appellant refused the offer and told Leonardo the plan was to return to the residence where Javier Sr. and Leonardo resided. So Leonardo drove home. After a short time there, Javier Sr. requested that they be taken to Emily's (which was only a short drive away). According to Leonardo, they arrived at Emily's around 5:00 a.m. and once there Javier Sr. told Leonardo he would call him in about an hour. Leonardo when home and went to sleep.

Leonardo woke up at 6:40 a.m. and realized Javier Sr. had not texted or called him. Leonardo drove to Emily's. As he pulled up in his truck, Leonardo saw through the open French doors that a table had been flipped over. He ran inside and observed appellant kicking a hole in the wall while angrily screaming. The scene was chaotic—tables were flipped over, paintings had fallen off the wall, glass bottles were smashed, and it appeared that there had been a struggle. Leonardo saw

2

Javier Sr. lying face down on the ground in a pool of blood and flipped him over. Javier Sr.'s face was purple, swollen, and covered in blood with small pieces of glass. He had a large dent in his forehead.

Leonardo recalled that while he was bent over his father, appellant ran into the kitchen. Leonardo pursued appellant, who appeared to be looking for a way out in a panicked state. Appellant pushed over a large silver rack, which Leonardo avoided. Leonardo returned to his father and shook him, with no response. Appellant then ran through the open French doors and into the passenger's seat of Leonardo's running truck. Leonardo followed appellant, who told Leonardo "Let's go." Leonardo turned off the vehicle and attempted to get appellant out. Appellant exited, attempted to jump over a wooden fence, and ran off in the direction of some nearby houses. Leonardo called 9-1-1, and provided law enforcement appellant's description.

Around this time, Cheryl White saw appellant standing outside her living room window and also called 9-1-1. Appellant went to the other side of her house and began knocking on her front door. After her husband threatened to shoot him, appellant turned around and walked up the dirt path back toward Emily's. Officer Adam Erlewein with the Alvin Police Department saw appellant, who matched the description provided by Leonardo. Erlewein asked him to stop, and appellant stated he was going to a friend's house. Appellant was detained and positively identified by Leonardo.

After being transported to the Alvin Police Department, appellant waived his *Miranda* rights and spoke to Detective Justin Kelly. Appellant confirmed he was with Javier Sr. earlier that morning. Appellant claimed that he could remember what occurred before and after his time at Emily's, but had no memory of what had happened when he was alone with Javier Sr. Though prompted by another

3

detective regarding the possibility that he had defended himself, appellant did not say that he had acted in self-defense.

In his statement, appellant asked the detectives whether they were saying Javier Sr. suffered "trauma" and that he hit Javier Sr. with a "blunt object." The medical examiner's office later determined the cause of death to be blunt head trauma from multiple blows, which could have been caused by punching, kicking, or a blunt object.

When the police found appellant he had bruising on his right shoulder and right knuckle. Javier Sr.'s DNA was found on appellant's jeans and shoes. Complainant is included "with caution" as a possible contributor to the DNA profile on appellant's hands.

Appellant entered a plea of not guilty on July 7, 2021, and on July 15, 2021, after trial, the jury returned a guilty verdict. The following day, the jury assessed punishment, and the trial court entered judgment consistent with the verdict sentencing appellant to 20 years' confinement in the Texas Department of Criminal Justice-Institutional Division.

Appellant timely filed a motion for new trial based on a July 29, 2021 letter appellant's counsel received from the prosecutor's office. Appellant attached his counsel's affidavit, his trial counsel's prior discovery requests, and the letter he had received from the prosecutor's office. The letter reported that Josh Collins, an investigator with the Alvin Police Department, who had been a witness at trial, had received information from Leonardo "during trial", that Leonardo and Javier Jr. had been in an argument because "Leonardo felt that Javier Jr. was not helping the family like he should be nor was Javier Jr. supporting his wife and kids like he should be". Leonardo had further reported that Javier Jr. was planning to leave his wife and kids and move to Dallas and that Leonardo was no longer welcome at

4

Javier Jr.'s house following a "physical altercation" between Leonardo and Javier Jr.

The visiting judge presiding over the motion for new trial acknowledged the affidavit filed by appellant indicating her consideration of the evidence at the hearing. At the hearing the judge expressed doubts about appellant's right to relief and concerns specifically regarding the third prong of the four-part test applied to new trial requests based on newly discovered evidence.[1] The motion was overruled by operation of law.

## II. EXCLUDED EVIDENCE

In his first issue, appellant argues that the trial court abused its discretion when it refused to permit appellant to introduce evidence that child pornography was found on the complainant's phone.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Romano v. State*, 612 S.W.3d 151, 158 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd).

We first consider whether appellant preserved error on his first issue, whether his complaint comports with his arguments for admissibility in the trial court, because appellant only now contends this excluded evidence would have

---

[1] Tex. Code Crim. Pro. Ann. art. 40.001("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."); see also *see infra* Part III, citing *State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017) (setting out four-part test applied to motions under article 40.001, the third prong requires defendant to show "the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching).

aided his self-defense theory at trial.[2]   The record indicates admissibility of this evidence was raised three times.

First, during pretrial, when addressing the State's motion in limine—seeking the court's approval on references at trial to child pornography found on the complainant's phone—appellant argued that two child pornographic videos found on the complainant's phone were admissible because they were relevant to the motive of a potential alternative perpetrator and whether law enforcement conducted a complete investigation. Appellant's counsel described the evidence as two videos: One is of a minor child receiving oral sex from an adult; the other is of a minor child being made to penetrate and be raped by a chicken.  The trial court granted the motion in limine, precluding appellant from offering the evidence without first approaching the bench.

Later, during trial, on appellant's counsel's cross-examination of Patrol Lieutenant Gilcrease, appellant's counsel approached the bench and requested permission to ask a question regarding the general nature of child pornography. The trial court denied appellant's request during this exchange:

> Q. And one of the reasons why you preserve or pass this phone off to be preserved was to preserve any type of video that could be criminal. Right?
>
> A. Yes, sir.
>
> MR. BROWN: Judge, may we approach?
>
> THE COURT: Sure.
>
> **(AT THE BENCH, ON THE RECORD.)**

---

[2] We acknowledge that there are several potentially valid preservation concerns with respect to appellant's first complaint, including the extent to which appellant's arguments during the motion in limine could preserve the issue, whether appellant's counsel made a sufficient offer of proof, and whether a definitive adverse ruling was ever secured.  We only need address the question whether appellant's complaint on appeal comports with the issue he sought to preserve in the trial court.

MR. BROWN: I know there's a motion in limine about -- about child pornography. I want to ask him one question about -- about child pornography in a general nature.

MR. HRACH: General nature about --

MR. BROWN: I'm setting a foundation for later in this trial.

THE COURT: Sustained.

If it becomes relevant, you can ask the question at a later time.

MR. BROWN: Okay.

During the exchange, appellant's counsel did not request admission of the evidence on the basis that it was relevant to appellant's self-defense or for any other basis.

Finally, during appellant's counsel's questioning of Detective Kelly, the trial court instructed appellant's counsel not to ask any questions regarding child pornography during cross-examination. Appellant's trial counsel approached and argued, as he had at the motion in limine, that the alleged child pornography was admissible on the basis that it was proof to support motive for a third-party perpetrator and showed that the investigation was not thorough.

To preserve a complaint of error, the record must demonstrate appellant made a timely request with enough specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* Tex. R. App. P. 33.1. Furthermore, the argument on appeal must comport with the specific complaint that the appellant timely lodged in the trial court. *Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). The appellant must have conveyed to the trial court the particular argument raised on appeal, including the precise and proper application of law as well as the underlying rationale. *Penton*, 489 S.W.3d at 580; *Fish v. State*, 609 S.W.3d 170, 178 (Tex. App.—Houston [14th

Dist.] 2020, pet. ref'd).

Because appellant failed to attempt to explain to the trial court (as he attempts to explain on appeal) that the complainant's possession of the child pornography videos related in any way to an assertion of self-defense, the question now presented was not preserved for our review. That is, appellant's argument for admissibility does comport with the specific complaint that the appellant timely lodged in the trial court. *See id.* (holding appellant failed to preserve admissibility-of-evidence complaint–offered to rebut false impression–despite preserving error on other grounds of admissibility). Conversely, we need not consider whether the trial court erred in excluding this evidence on the grounds appellant's counsel sought to have it admitted at trial – to support motive for a third-party perpetrator and to show that the investigation was not thorough – because he has abandoned those grounds on appeal.

We therefore overrule appellant's first issue.

### III. NEW TRIAL

In his second issue, appellant argues that the trial court erred in failing to grant him a new trial after the discovery of evidence that Javier Sr.'s two sons, Leonardo and Javier Jr., had a falling out near the time of trial that resulted in a physical altercation between the two brothers. [3]

---

[3] The State argues first that appellant failed to preserve his new-trial complaint by failing to present evidence at the new-trial hearing. The State is correct: neither party tendered any exhibit or presented any witness at the hearing. But attached to its verified motion for new trial, appellant had included two affidavits of its counsel, and at the hearing, Judge Yates made it unmistakably clear that the she was aware of the affidavits and had considered them in preparing to preside over the hearing. The State never objected to her consideration of the affidavits at the hearing as outside the record or otherwise. Upon this record we are reluctant to conclude that appellant waived the issue. *See Godoy v. State*, 122 S.W.3d 315, 319–20 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)(considering affidavits and medical records filed with new-trial motion which were impliedly admitted into evidence as if formally admitted into evidence).

8

We review a trial court's denial of a motion for new trial for an abuse of discretion. *McQuarrie v. State,* 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* An appellate court views the evidence in the light most favorable to the trial court's ruling, defers to the trial court regarding credibility determinations, and presumes that all reasonable fact findings in support of the ruling have been made. *State v. Thomas,* 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). A trial court abuses its discretion in denying a motion for a new trial when no reasonable view of the record could support the trial court's ruling. *McQuarrie,* 380 S.W.3d at 150.

Appellant filed a motion for new trial under the Texas Code of Criminal Procedure 40.001. Tex. Code of Crim. Proc. art. 40.001. A defendant can obtain relief under this provision if he shows the following:

> (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;
>
> (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;
>
> (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and
>
> (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Id.*; *State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017). Motions for new trial predicated on newly discovered evidence are not favored by appellate courts and are viewed with great caution. *State v. Fury*, 186 S.W.3d 67, 73 n.4 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Soliz v. State*, No. 14-14-00498-

9

CR, 2015 WL 4141212, at \*3 (Tex. App.—Houston [14th Dist.] Jul. 9, 2015, no pet.) (mem. op., not designated for publication).

Much of the evidence presented in the new trial motion and discussed at the hearing related to the first two prongs of the analysis.[4] The record tends to show that this newly discovered evidence was unknown or unavailable to the defendant at the time of trial, and the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence. We thus turn to the third requirement under article 40.001.

### *Is the new evidence admissible and not merely cumulative, corroborative, collateral, or impeaching?*

The "physical altercation" between Leonardo and Javier Jr. occurred three years after the charged offense and did not involve Leonardo's relationship with Javier Sr. Appellant argues that the fight between Leonardo and Javier Jr. shows Leonardo's "animus" toward family members who neglect their familial responsibilities. Specifically, appellant suggests this reported sibling conflict is probative that appellant harbored a similar animus against his father. The trial court could have reasonably rejected this view. First it is not clear from the proffered letter whether Leonardo or Javier Jr. instigated the physical altercation. The recusal court could have reasonably determined that this fight between brothers had no direct bearing on the relationship between Leonardo and his father. There was no

_____

[4] Though appellant's motion for new trial and his brief on appeal refer to the district attorney's duty under *Brady* to disclose evidence favorable to appellant, under his second issue, he does not assert that the State's failure to disclose such evidence (more rapidly than it did) independently entitled appellant to a new trial or some other form of relief. Rather on appeal, he argues that the trial court's failure to grant a new trial on the basis of the newly discovered evidence followed from errors in its analysis under article 40.001 of the Texas Code of Criminal Procedure. Thus, we do not construe appellant's discussion of the State's duty under state and federal law to disclose such evidence as setting out a separate ground for error, but as pertinent to the issue raised, germane to the first two prongs of the analysis under article 40.001 of the Texas Code of Criminal Procedure.

evidence Leonardo believed his father neglected his familial responsibilities and no evidence that Leonardo and his father ever had disagreements or fights based on his father's behavior.

With regard to a party's ability to conduct cross-examination, a matter is considered "collateral" when "the cross-examining party would not be entitled to prove it as a part of his case tending to establish his plea." *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990) (en banc). While appellant would be entitled to prove facts that would show that Leonardo was the first aggressor, the evidence of his fraternal altercation with Javier Jr. three years later could only provide proof collateral to such facts. That is, even if the evidence illustrates Leonardo's sense of familial loyalty and obligation and his willingness to voice disapproval to family members who do not share the same view, it does not establish Leonardo as an instigator of violence. Nor does the evidence offered at the motion for new trial establish Leonardo's capacity to inflict the degree of violence reflected by Javier Sr.'s injuries. Appellant's counsel cross-examined Leonardo over the course of two days, probing the details of his testimony on direct examination. Whether Leonardo had a physical dispute with Javier, Jr. three years after the events in question would not have undermined Leonardo's testimony.

Even assuming without concluding that evidence regarding a fight between Leonardo and Javier Jr. could have impeached Leonardo's testimony, it was not sufficiently "material and competent independent of its impeaching tendency" to show that it would have probably brought about a different result. *Id.*

Because the trial court could have reasonably concluded that appellant failed to put forth sufficient proof in support of the third and fourth prongs of article 40.001, we conclude it did not abuse its discretion.

11

We therefore overrule appellant's second issue.

## IV. JURY CHARGE

In his third issue, appellant asserts that the trial court reversibly erred when it refused to include a self-defense instruction in the jury charge.

In reviewing alleged jury charge error, appellate courts engage in a two-step process. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether there was error in the charge; if not, our analysis ends. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649. If we find there was error in the charge, we must then determine whether sufficient harm resulted from the error to require reversal. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649. In the instant case, we only reach the first part of this analysis.

A defendant is entitled to a self-defense jury instruction when the issue is raised by the evidence, "whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). "A trial court errs in denying a self-defense instruction if there is some evidence, from any source, that will support the elements of self-defense." *Fury v. State*, 607 S.W.3d 866, 875 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Gamino*, 537 S.W.3d at 510). "A person is justified in using deadly force against another if ... he reasonably believes deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing Tex. Penal Code § 9.32(a)).

"Self-defense is a confession-and-avoidance defense requiring the defendant

to admit to his otherwise illegal conduct." *Jordan*, 593 S.W.3d at 343 (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)); *see Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018). "He cannot both invoke self-defense and flatly deny the charged conduct." *Jordan*, 593 S.W.3d at 343 (citing *Juarez*, 308 S.W.3d at 406 (confession-and-avoidance requirements satisfied despite Juarez's inconsistent testimony alternatively admitting to the conduct and claiming it was an accident)). Under this doctrine, "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state but interposes the justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (emphasis in original). A defendant who denies committing the offense, on the other hand, is not entitled to such an instruction because he contends "he has engaged in no conduct which needs justifying." *Gilmore v. State*, 44 S.W.3d 92, 97 (Tex. App. — Beaumont 2001, pet. ref'd).

A claim of self-defense must be supported by the record, and the defendant bears the initial burden of producing evidence supporting submission of an issue on this defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). In reviewing this issue, we view the evidence in the light most favorable to the defendant's requested defensive instruction. *Gamino*, 537 S.W.3d at 510 & n.6 (citing *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006)).

Appellant did not testify at trial; he did not provide testimony in support of a self-defense claim. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc) ("While a non-testifying defendant may be entitled to a charge on self-defense, it is rare for the defense to be raised when the defendant fails to testify.").

In the unusual circumstance where a self-defense instruction is required in

the absence of a defendant's testimony, the court must find some evidence of the defendant's intent through the defendant's conduct or statements made by the defendant during or shortly after the offense. *See, e.g., Durden v. State*, 659 S.W.3d 26, 37 (Tex. App.—Houston [14th Dist.] 2021) (though the defendant did not testify, another witness had testified that the defendant reported to him that she had killed the complainant and that the complainant had tried to rape her.). But on the record before us, we find no such evidence.

Leonardo was the first person to make contact with appellant after returning to Emily's where he found his father lying in a pool of his own blood and appellant kicking a wall. Leonardo did not report any statements or conduct by appellant suggesting that appellant had been attacked by complainant. Rather Leonardo reported that appellant had sought to flee.

When appellant was apprehended and taken into custody he provided a statement, but he told the investigator that he could not remember anything that occurred when he was at Emily's. At one point in the interview, one of the officers specifically questioned appellant on the possibility of self-defense, which appellant denied. Importantly, appellant's testimony that he blacked out when he was at Emily's negates the element of intent associated with his self-defense argument. *See Uddley v. State*, No. 07-06-0483-CR, 2008 WL 5334562, at *2–3 (Tex. App.—Amarillo Dec. 22, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that the appellant was not entitled to a self-defense instruction where he testified that he did not remember the events leading to the victim's death and the State's evidence did not raise the issue); *Spencer v. State*, No. 14-99-00969-CR, 2000 WL 1752766, at *3 (Tex. App.—Houston [14th Dist.] Nov. 30, 2000, pet. ref'd) (not designated for publication) (finding that the appellant was not entitled to a self-defense charge where she did not testify, there was no other evidence

showing she reasonably believed she was in danger, and there was no evidence that any person had done anything to justify the appellant's actions).

The physical evidence and character evidence offered do not sufficiently overcome this deficiency. The crux of appellant's defense is based on the fact that complainant was found with his zipper down, that Julia Gomez testified that appellant had been known to kiss men when intoxicated, and Officer Jenny Humbird's theory that "the death occurred in defense of an unwanted sexual advance." With regard to his zipper, the law enforcement's testimony was that there was no evidence that complainant had pulled out his penis. Though the zipper might provide some circumstantial evidence, without more, it is not demonstrative of sexually aggressive conduct.

Appellant conflates testimony that complainant had been known to kiss men when intoxicated and speculation that complainant had made an unwanted sexual advance toward appellant with evidence that complaintant was sexually violent toward appellant. In the absence of any evidence of threatening behavior by complainant, appellant relies on testimony that tends more to disprove his theory than support it:

> Q. Even if -- even if the questions to Mr. Brown -- the questions by Mr. Brown about sexual advances, even if, whatever terminology you want to use, even if the victim had made a sexual advance toward the defendant, did you have anything to suggest that it was reasonable to believe he needed to beat the guy to death?
>
> A. No.

We conclude from the evidence presented at trial that the trial court could have reasonably found that appellant was not entitled to a self-defense instruction.

We therefore overrule appellant's third issue.

### V. CONCLUSION

15

Having overruled each of appellant's complaints on appeal, we affirm the trial court's judgment.

/s/    Randy Wilson
Justice

Panel consists of Justice Spain, Justice Poissant and Justice Wilson (J. Spain, concurring).

Publish — Tex. R. App. P. 47.2(b)