**Opinion issued October 31, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-22-00624-CR

NO. 01-22-00625-CR

NO. 01-22-00626-CR

————————————

**BRIAN CHARLES FRANKENFIELD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 21-CR-1806, 21-CR-1807, 21-CR-1808**

---

**MEMORANDUM OPINION**

A grand jury charged appellant, Brian Charles Frankenfield, with three counts of the second-degree felony offense of assault on a peace officer.[1] On each of the three counts, a jury found Frankenfield guilty of the lesser-included offense of assault on a public servant.[2] After Frankenfield pleaded true to the allegations in an enhancement paragraph, the jury assessed Frankenfield's punishment at thirteen years' confinement for each offense and imposed a $500 fine for each offense. The trial court ordered the three sentences to run concurrently.

In one issue on appeal, Frankenfield argues that the trial court erred by failing to submit a requested jury instruction on the multiple assailants defense. We affirm.

## Background

The Galveston County Jail has a disciplinary administrative segregation unit called G-300. This is a two-story unit with individual cells surrounding a dayroom. Each cell houses only one inmate. Inmates in this unit are allowed out of their cells for one hour per day. Inmates cannot freely enter and exit their cells. Instead, jail policy required most inmates in this unit to be handcuffed and shackled before they

---

[1] *See* TEX. PENAL CODE § 22.01(b-2).

[2] *See id.* § 22.01(b)(1). The assault against Deputy A. Imber was tried in trial court cause number 21-CR-1806, which resulted in appellate cause number 01-22-00624-CR. The assault against Deputy C. Presley was tried in trial court cause number 21-CR-1807, which resulted in appellate cause number 01-22-00625-CR. The assault against Deputy D. Chapa was tried in trial court cause number 21-CR-1808, which resulted in appellate cause number 01-22-00626-CR.

leave their cell. Jail policy also required at least two deputies to be present in the unit.

On May 15, 2021, Frankenfield was an inmate housed in G-300, and he was scheduled to have his "hour out" that evening. Deputy A. Imber—accompanied by Deputy D. Chapa and Deputy C. Presley, Chapa's trainee officer—stood at the open doorway to Frankenfield's cell and explained the rules about what Frankenfield could and could not do while out of his cell. Frankenfield was mumbling and not paying attention. When Imber asked whether Frankenfield wanted to have his hour out, Frankenfield responded that he did, so Imber walked into the cell so he could put handcuffs on Frankenfield. Frankenfield refused to be placed in handcuffs. Imber then informed Frankenfield that because he refused the handcuffs, he had forfeited his hour out of his cell. Imber turned his back to Frankenfield and walked toward the door of the cell.

With Imber's back turned, Frankenfield rushed toward the door of the cell, stood in the doorway, and grasped the door, holding it open. Imber pushed Frankenfield back inside the cell, and Frankenfield "threw a strike at [Imber's] face." A physical altercation ensued. Deputies Chapa and Presley also became involved to subdue Frankenfield and ensure that he did not leave his cell while unsecured. Throughout the course of the incident, Frankenfield threw punches at all three deputies. Frankenfield hit Chapa in the face multiple times, and he struck Presley by

3

the eye and bit his hand. He also stuck his finger in Imber's eye and bit Imber's finger. Eventually, Imber grabbed Frankenfield's legs, and the deputies managed to get Frankenfield on the floor of his cell.

Chapa and Presley both used their radios to call for assistance. Several other deputies—including Deputy J. Hopkins—arrived at Frankenfield's cell to help secure Frankenfield in handcuffs and escort him to the medical unit. While walking through G-300 to the medical unit, Frankenfield was yelling and bragging to the other inmates about being involved in a fight with the deputies. Near the entrance to the unit, Frankenfield "pulled away again causing [the deputies] to redirect him to the ground to make sure that nothing else occurred." During this second incident, Frankenfield elbowed Hopkins in the face.[3] Jail personnel did not observe any injuries on Frankenfield.

A surveillance camera monitored the G-300 unit, and it captured a video recording of the entire encounter between Frankenfield and jail personnel. The camera did not record any audio. The trial court admitted a copy of this recording into evidence.

---

[3]    With respect to the incident involving Deputy Hopkins, a grand jury charged Frankenfield with the third-degree felony offense of assault on a public servant. *See id.* This charge was tried at the same time as the three charges at issue in this appeal, but the jury was unable to reach a unanimous verdict on this charge. The trial court declared a mistrial as to this offense.

4

Frankenfield represented himself pro se at trial, and he testified on his own behalf. According to Frankenfield, the deputies were rude and hostile when they first entered his cell, and he became angry when the deputies told him that his hour out had been forfeited because he had wanted to take a shower. Frankenfield testified about the incident as follows:

> So, I kind of moved forward quickly to the door and I grabbed the door and hold the door open. I didn't try to come out the cell. I didn't throw punches at the door or none of that stuff.
>
> Well, he [Imber] immediately turns around and he pushes my arm at me. And when he pushes my arm at me, he hits me in the face with the handcuffs. Now, maybe it was unintentional; maybe it wasn't. And then the entire scrum happened. So, they're pushing me to the back of the cell, all three of them, and I'm retreating the whole time because really I'm trying to get away from them and trying not to . . . I'm trying not to get pushed over and hit my head.
>
> So, we get to the back of the cell. And you seen, there was punches being thrown by everybody. Presley, he said the same thing I said. And it's—basically we were all in mutual combat, to be honest with you. And I'll be honest with you, I was scared for my life. I'm watching people with shackles and handcuffs swing stuff at me. Presley hit me with shackles, shackles thrown over him, punches at me. I mean, I have no explanation for what I was going through because, to be honest with you, you don't expect that when you're in jail.
>
> So, finally, he pulls my legs out from underneath me and I hit my head on the wall. I kind of catch myself between the toilet and the wall, and I fall down on my back. Somebody jumps on top of me. I don't know who that was. I guess it was Chapa. And they finally get me in handcuffs, get me in shackles, and then they take me downstairs.

Frankenfield did not deny that the incident occurred, but he stated that "from [his] perspective, [he] was scared. [He saw] people with weapons, and [he] was defending

5

[himself] the entire time." With respect to the second incident involving Hopkins, Frankenfield testified that Hopkins pulled Frankenfield's arm and "at some point in time [Hopkins] got hit." Frankenfield did not remember hitting Hopkins.

During the charge conference, Frankenfield requested, among other things, an instruction on the defense of multiple assailants. Frankenfield argued that he was entitled to this instruction because three deputies were present at his cell and two of them had weapons, specifically, handcuffs, shackles, and radios. The trial court denied this request. The written charges provided to the jury for each offense contained instructions on self-defense and instructions on the lesser-included offense of assault on a public servant.

In each of the three cases at issue in this appeal, the jury found Frankenfield guilty of the lesser-included offense of assault on a public servant. At the punishment hearing, Frankenfield pleaded true to the allegations in an enhancement paragraph. The jury assessed Frankenfield's punishment at confinement for thirteen years for each offense and imposed a $500 fine for each offense. The trial court ordered the sentences to run concurrently. This appeal followed.

**Jury Instruction on Multiple Assailants Defense**

In his sole issue on appeal, Frankenfield argues that the trial court erred by denying his request for a jury instruction on the multiple assailants defense.

### A. Standard of Review

We review a claim for jury charge error under a two-step process. *Rogers v. State*, 664 S.W.3d 843, 848 (Tex. Crim. App. 2022); *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015). First, we must determine whether error exists. *Rogers*, 664 S.W.3d at 848. If so, we then conduct a harm analysis. *Id.* When the defendant preserves the alleged error, as Frankenfield did in this case, we must reverse if the error caused the defendant to suffer "some harm." *Id.*; *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

A charge error that was properly preserved "will call for reversal as long as the error is not harmless." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). We assess harm in light of the entire jury charge, the state of the evidence (including the contested issues and weight of the probative evidence), the arguments of counsel, and any other relevant information revealed by the trial record as a whole. *Alcoser*, 663 S.W.3d at 165 (quoting *Almanza*, 686 S.W.2d at 171). The defendant must suffer some actual, rather than merely theoretical, harm from the error. *Reeves*, 420 S.W.3d at 816 (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)).

### B. Submission of Multiple Assailants Instruction

The trial court shall deliver to the jury a written charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. Regardless of the

strength or credibility of the evidence, a defendant is entitled to an instruction on any defensive issue that is raised by the evidence. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020); *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017) (stating that defendant is entitled to jury instruction when defensive issue is raised by evidence "whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense"). The evidence raises a defensive issue if there is sufficient evidence to support a rational jury finding on each element of the defense. *Jordan*, 593 S.W.3d at 343; *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

When reviewing a trial court's decision to deny a defensive issue in a jury charge, we view the evidence in the light most favorable to the defendant's requested submission. *Rogers*, 664 S.W.3d at 848 (quoting *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006)); *Jordan*, 593 S.W.3d at 343. A trial court errs in denying a defensive instruction "if there is some evidence, from any source, when viewed in the light most favorable to the defendant," that will support the elements of the defense. *Gamino*, 537 S.W.3d at 510. We do not apply the "usual deference" to trial court rulings. *Rogers*, 664 S.W.3d at 848.

When the evidence viewed from the defendant's standpoint shows an unlawful attack or threatened attack by more than one assailant, the defendant is entitled to a "multiple assailants" instruction. *Jordan*, 593 S.W.3d at 343; *Frank v.*

*State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985) (stating that charge confining right to use force in self-defense only against complainant is "too restrictive" if evidence exists that more than one person attacked defendant); *see Dugar v. State*, 464 S.W.3d 811, 817 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). This issue may be raised "even as to those who are not themselves aggressors as long as they seem to be in any way encouraging, aiding, or advising the aggressor." *Jordan*, 593 S.W.3d at 343.

This defensive issue "does not require evidence that each person defended against was an aggressor in his own right." *Id.* at 344. Instead, the issue "requires evidence that the defendant has a reasonable fear of serious bodily injury from a group of people acting together." *Id.*; *Dickey v. State*, 22 S.W.3d 490, 493 (Tex. Crim. App. 1999) (Keller, P.J., concurring) ("The rule concerning multiple assailants is essentially an application of the law of parties to the defendant's assailants."). "If there is evidence of more assailants than one, the charge must inform the jury that the accused can defend against either, and it is error to require the jury to believe or find that there was more than one assailant attacking the accused." *Jordan*, 593 S.W.3d at 345 (quoting *Black v. State*, 145 S.W. 944, 947 (Tex. Crim. App. 1912)); *see Dickey*, 22 S.W.3d at 493 (Keller, P.J., concurring) ("The theory behind the multiple assailants charge is that, when it is clear that an attack is being conducted by multiple people as a group, a defendant is justified in using force against any

member of the group, even if the recipient of that force is not engaging in conduct that would, by itself, justify the use of force (or deadly force as the case may be).").

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31(a). Generally, the use of force is not justified to resist an arrest or search that the actor knows is being made by a peace officer, even though the arrest or search is unlawful. *Id.* § 9.31(b)(2). However, resistance to an arrest or search is justified if (1) before the actor offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search, and (2) when and to the degree the actor reasonably believed the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary. *Id.* § 9.31(c).

"Knowing the innate danger in maintaining a correctional facility, the legislature grants correctional officers the right to use reasonable force against an inmate to maintain their own safety, the safety of others, or the security of the prison as a whole." *Hall v. State*, 158 S.W.3d 470, 475 (Tex. Crim. App. 2005). Penal Code section 9.53 provides that an officer or employee of a correctional facility is justified in using force against a person in custody "when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the

correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security." TEX. PENAL CODE § 9.53; *see id.* § 1.07(a)(14)(A) (defining "correctional facility" to include "a municipal or county jail"). If a correctional officer's use of force "falls within the above definition, he is lawfully discharging his official duties." *Hall*, 158 S.W.3d at 475.

On appeal, Frankenfield argues that some evidence raised the defensive theory of multiple assailants, and therefore the trial court erred by refusing the requested instruction. Frankenfield argues that he was scared when the three deputies entered his cell, and he points to his testimony concerning the incident. He argues that the key inquiry is whether he "had a reasonable apprehension of actual or apparent danger from a group of assailants that included Deputies Imber, Chapa and Presley." We disagree that the defense of multiple assailants was raised by the evidence in this case.

The deputies and Frankenfield disagreed on what was said at the beginning of the encounter at Frankenfield's cell, with the deputies testifying that they were explaining the rules about the "hour out" to Frankenfield while Frankenfield was mumbling and not paying attention, and Frankenfield testifying that Imber was rude and hostile to him. However, all individuals involved—including Frankenfield— testified that after Imber and Frankenfield spoke and the deputies determined that Frankenfield had forfeited his hour out, Imber turned around with his back to

Frankenfield and started to leave the cell. Frankenfield, angered that his hour out had been forfeited, then "rushed" or "moved forward quickly" toward the door of the cell and grabbed the door to hold it open. The deputies and Frankenfield all agreed that Imber then pushed Frankenfield back into the cell. Frankenfield testified that when Imber pushed Frankenfield's arm, Frankenfield was hit in the face with Imber's handcuffs—an action that Frankenfield acknowledged could have been unintentional. The deputies all testified that Frankenfield threw the first punch at Imber.

If there is evidence that the defendant "was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant, the trial court should instruct the jury that the defendant had a right to protect himself against the multiple assailants." *See Dugar*, 484 S.W.3d at 817. Here, there is no evidence that Frankenfield was in danger of or subjected to an unlawful attack. At the time Frankenfield escalated the encounter by rushing toward the door of his cell, there is no evidence that the deputies were threatening him or otherwise planning to attack him. Instead, the evidence is that Imber was walking away, with his back to Frankenfield, and the deputies were preparing to move on from Frankenfield's cell.

Frankenfield is the one who necessitated the deputies' actions by quickly moving toward the door of his cell and creating the possibility for a security breach. The deputies' actions in response—pushing Frankenfield back into his cell to

12

prevent him from entering the dayroom of G-300 while unsecured—were justified under Penal Code section 9.53. *See* TEX. PENAL CODE § 9.53 (providing that officer of correctional facility is justified in using force against person in custody when officer reasonably believes force is necessary to maintain security of facility); *Hall*, 158 S.W.3d at 475–76 (concluding that correctional officer's push of defendant was attempt to move defendant towards his cell and preserve safety of officers and others and was "well within the scope of [the officer's] lawful duties," such that defendant, in prosecution for assault on public servant, was not entitled to instruction on lesser-included offense of misdemeanor assault). This is not a situation in which multiple assailants unlawfully attacked or threatened to attack Frankenfield.

We conclude that the defense of multiple assailants has not been raised by the evidence in this case. *See Jordan*, 593 S.W.3d at 343 (stating that regardless of strength or credibility of evidence, defendant is entitled to instruction on any defensive issue that is raised by evidence). We therefore hold that the trial court did not err by denying Frankenfield's request for a multiple assailants jury instruction.

We overrule Frankenfield's sole issue.

**Conclusion**

We affirm the judgments of the trial court.


                                          April L. Farris
                                          Justice

Panel consists of Justices Kelly, Landau, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).