**AFFIRMED as MODIFIED and Opinion Filed June 7, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00005-CR**

**DESTIN BAILEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F20-51637-M**

# MEMORANDUM OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Breedlove

Appellant Destin Bailey was indicted for aggravated assault causing bodily injury with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). The State filed notice of intent to enhance with a prior juvenile felony conviction. A jury convicted appellant, found the enhancement allegation to be true, and assessed punishment at seven years' imprisonment. In two issues, appellant challenges the jury charge and requests modification of the judgment. The State agrees to the modification and requests an additional modification. We affirm appellant's conviction. We modify the judgment as the parties have requested.

## BACKGROUND

On January 23, 2020, appellant and Christian Mirales shot firearms at a car being driven by Alexander Vazquez. Vazquez was injured in the back by a bullet that traveled through the trunk of his car and through the driver's seat. Appellant was indicted for aggravated assault with a deadly weapon, and the case proceeded to a jury trial.

The parties offered conflicting evidence about the events leading up to the shooting. Vazquez testified that he was driving Mirales's sister Samantha Larez home when the car in front of him began braking hard. Samantha told Vazquez that it was her brother Mirales's car and to "leave them alone, they are drunk." There was a passenger in Mirales's car, later identified as appellant. Vazquez pulled up to the house behind Mirales to drop Samantha off. Vazquez testified that two individuals, both with guns in their hands, yelled at him and told him to leave. He rolled down his window to show he was not armed and to indicate that he was trying to leave. He testified that he did not have a weapon at any time and he did not make any threats to anyone.

As Vazquez drove away, he saw flashes in his rear view mirror, and then his back felt wet. He then saw blood, got out of his car, and fell down as he was trying to call 911 on his phone. He testified that he was about two houses away from Samantha and Mirales's home when he was shot. He identified appellant as one of

the individuals involved. He explained that a bullet pierced through the trunk of his car, went through the back and front seats, and hit him.

Vazquez testified that a bullet lodged in his back and had to be surgically removed. He spent two and a half months in the hospital.

Vazquez testified that on the day he was shot, he was not "doing anything illegal"; "[j]ust hanging out with Samantha" and talking with her. He also admitted, however, that he had a criminal record dating back to 2006, when he was convicted of burglary of a habitation. He admitted to additional convictions in 2009 (evading arrest), 2010 (unauthorized use of a vehicle), 2011 (theft), 2013 (credit and debit card abuse, theft, and evading arrest), 2015 (theft), and 2018 (theft). On cross-examination, Vazquez admitted to additional offenses in 2006 and 2007 (failure to I.D. as a fugitive), 2009 (evading arrest), 2010 (theft and unauthorized use of a motor vehicle), 2012 (credit card abuse), 2015 (stolen car), and 2018 (fraudulent possession of I.D.s). He testified that he had been incarcerated on more than one occasion.

Mirales, in turn, testified that he and appellant were driving home from getting pizza when Vazquez intentionally struck the back of their car, then followed them to Mirales's home, parked on the front lawn, and threatened them. Mirales testified that appellant got out of the car, went into the house, and "came out with the guns." Appellant handed one of the guns to Mirales and kept the other. Mirales accused Vazquez of hitting his car and then "shot a warning shot." Mirales testified that Vazquez then said "Are you ready to die mother[*]." Vazquez then "turned like he

–3–

was reaching for something." He did not see Vazquez with a gun, however, and Vazquez never got out of the car. Vazquez then "reversed back really fast out of the yard and he was in the street." Mirales then heard one gunshot, and saw appellant with a gun. He admitted to firing a gun at Vazquez, and he also testified that he saw appellant fire a gun at Vazquez. He shot four shots himself, and appellant shot "[o]ne or two, I think it was one." He explained that after appellant "shot the one shot," Vazquez's car stopped, Vazquez got out, and then fell.

Mirales testified that he had pleaded guilty to charges arising from Vazquez's shooting, but had not yet been sentenced, and did not have any plea deal with the State. He also testified that he had been arrested for aggravated assault on another person about a year after the events in this case. Mirales also testified that although he was aware of Vazquez's reputation for violence, he had not talked to appellant about it.

At trial, appellant did not dispute evidence that he went into the home and returned with firearms, but he argued that he used the firearms only for self-defense after Vazquez threatened them. He contended that the bullet that injured Vazquez came from Mirales's gun, not the gun he fired. Appellant also argued that Vazquez's testimony was not credible, citing the evidence of Vazquez's numerous prior felony convictions.

Appellant also offered the testimony of Daniel O'Kelly, a firearms expert and the director of the International Firearms Specialist Academy, who testified:

Q.   . . . Does someone who reasonably believes they are under attack have to wait to be hurt or hit or actually attacked?

. . .

A.   No. If you wait until you see a gun, you may very well never get a chance to defend yourself, because . . . [a]t that point you are only a trigger-pull away from death, if the bullet hits you. . . . The use of deadly force is justified once an aggressor makes it clear that they intend to use deadly force against you and then makes a move toward putting that deadly force into play, by reaching for their weapon.

O'Kelly also testified about the firearms that were found at the scene, and offered his opinions about the sequence of events and the damage to Vazquez's car. Based on O'Kelly's opinions, the defense argued that the shot that injured Vazquez came from Mirales's gun, and all of Mirales's shots were "clothed in self-defense" because Mirales knew of Vazquez's reputation for violence.

The jury heard testimony from numerous other witnesses, including 911 operators, police officers, investigators, and examiners. The jury found appellant guilty of aggravated assault with a deadly weapon. After hearing the testimony of additional witnesses during the punishment phase of the trial, the jury sentenced appellant to seven years' imprisonment. This appeal followed.

### DISCUSSION

### 1. Requested jury instruction

In his first issue, appellant contends the trial court erred by refusing his request for an instruction "which would have allowed a jury to consider [Mirales's] conduct for justification," that is, to consider whether Mirales acted in self-defense. He

argues that the charge, as given, included an instruction on the law of parties, which "resulted in [appellant] and Mirales being found liable for each other's conduct."

As we have explained, Mirales was a witness, not a defendant, in the trial. Mirales testified that he had pleaded guilty to charges arising from the shooting of Vazquez, and would be sentenced later by the court. Accordingly, the jury was not required to make any decision about Mirales's guilt or possible defenses. Appellant argues, however, that because the jury was instructed on the law of parties, appellant could be found criminally responsible for Mirales's conduct, even if Mirales himself could have been acquitted on the ground of self-defense.

The jury charge included detailed instructions on self-defense and on "deadly force in defense of person" as to appellant. The trial court, however, refused appellant's request for an instruction about Mirales's self-defense. At trial, appellant's counsel objected to the charge on this basis:

> THE COURT: And back on the record. And Mr. Birdsall [defense counsel], any additional objections or requests?
>
> MR. BIRDSALL: Yes, Your Honor. The fact that this is a charge that incorporates the law of parties, introduces some confusion. And what I am specifically asking for is the jury be given the opportunity to measure the conduct of the codefendant, Christian Mirales, and decide whether or not it is justified under self-defense. Right now, the aggravated assault with a deadly weapon charge on page eight says, "That if you find beyond a reasonable doubt that the defendant acting alone or as a party," so it loops him into what Christian Mirales has done. Christian Mirales fired the first five shots. The evidence seems crystal clear that Christian Mirales shot the slug that hit the complainant. And without the jury ever being given a chance to see if Christian Mirales' conduct was justified, then this puts my client in peril. The only evidence of him being shot was by a codefendant, who

the defendant—who the jury is not given the ability to evaluate whether or not the codefendant's actions were justified.

THE COURT: Very well. And [the] Court will overrule that objection.

When addressing an allegation of jury-charge error, an appellate court first determines whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, the appellate court then determines whether the error caused sufficient harm to warrant reversal. *Id*. If, as here, the defendant lodged a timely objection to the charge at trial, reversal is required if the error resulted in "some harm" to the defendant. *Id*. (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

For both preserved and unpreserved charging error, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Patrick v. State,* 906 S.W.2d 481, 492 (Tex. Crim. App. 1995). The court must examine the relevant portions of the entire record to determine whether appellant suffered any actual, rather than theoretical, harm as a result of the error. *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). "This less-stringent standard still requires the reviewing court find the defendant suffered some actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (internal quotation omitted).

Appellant argues that he has the right to an instruction on any defensive issue raised by the evidence, regardless of the evidence's strength. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). And citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999), appellant argues that in deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. He does not cite any authority, however, to support the proposition that he was entitled to an instruction on Mirales's self-defense in addition to the instruction on his own self-defense.

The evidence is undisputed that appellant went into the house, retrieved weapons for himself and for Mirales, and shot at Vazquez as Vazquez was driving away. There is also evidence, however, that Vazquez threatened Mirales and appellant. The trial court accordingly instructed the jury that the State bore the burden "to prove beyond a reasonable doubt that self defense does not apply." The trial court also instructed the jury on self-defense and "deadly force in defense of person." Accordingly, the jury was instructed to acquit appellant if it found beyond a reasonable doubt that appellant shot Vazquez with a firearm,

> but you further find from the words or conduct or both of Alexander Vazquez it reasonably appeared to the defendant that his life or person was in danger and there created in his mind a reasonable expectation or fear of death or seriously [sic] bodily injury from the use of unlawful deadly force at the hands of Alexander Vazquez, and that acting under such apprehension, he reasonably believed that the use of deadly force on his part was immediately necessary to protect himself against Alexander Vazquez's use or attempted use of unlawful deadly force, and he shot the said Alexander Vazquez, then you should acquit the

defendant on the grounds of self-defense, or if you have a reasonable doubt as to whether the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the defendant the benefit of the doubt and say by your verdict not guilty.

Appellant contends, however, that these instructions were insufficient because "[w]ithout a charge on [Mirales's] justification of self-defense, a conviction in this case was virtually assured." He argues that "[l]ack of a charge on [Mirales's] justification of self-defense operated to deprive [appellant] of his only defense at trial," resulting in "some harm" and requiring reversal. *See Ngo* 175 S.W.3d at 743. We disagree.

Under the law of parties, "a person is criminally responsible for the conduct of another if he intends commission of the offense and does something to help the other person to commit it." *Johnson v. State*, 560 S.W.3d 224, 229–30 (Tex. Crim. App. 2018) (citing TEX. PENAL CODE ANN. §§ 7.01(a) and 7.02(a)(2)). Here, the trial court instructed the jury on the law of parties:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

*See* TEX. PENAL CODE ANN. § 7.02(a)(2) ("[a] person is criminally responsible for an offense committed by another if: . . . acting with the intent to promote or assist

the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense").

In *Johnson*, the court held that § 7.02(a)(2) "requires evidence that the defendant intended commission of the crime and did something to help the other commit it; it does not require evidence of the other person's intent." *Johnson*, 560 S.W.3d at 230. In that case, Johnson operated a funeral home owned by his wife. *Id.* at 226. He was convicted of theft of property for accepting payment for cremations that were never performed. *Id.* The court of appeals reversed Johnson's conviction, holding that because there was no evidence of the wife's intent or knowledge at the time Johnson accepted the payments, Johnson could not be held criminally responsible for her conduct under the law of parties. *See id.* at 228–29. The State appealed, and the Court of Criminal Appeals reversed, explaining,

> The lower court's requirement that the other intend the commission of the crime finds no support in the text of Section 7.02(a)(2) and ignores Section 7.01(a)'s "or by both" collective-conduct basis for criminal responsibility.
>
> The lower court's holding also runs afoul of Section 7.03(2) which stipulates that it is no defense to party liability that the other person was acquitted of the offense. If an outright acquittal of [Johnson's wife] would have offered Appellant no defense to party liability, then insufficient evidence of her intent in Appellant's trial should offer him no defense either, and the court of appeals erred to acquit him on that basis.

*Id.* at 230.

Similarly here, we conclude the trial court did not err by overruling appellant's objection to the charge. *See id.* Even if appellant's criminal responsibility was based

–10–

on Mirales's conduct, appellant could "be convicted upon proof of commission of the offense and that he was a party to its commission," even if Mirales had been acquitted on self-defense grounds. *See* TEX. PENAL CODE ANN. § 7.03(2). We overrule appellant's first issue.

## 2. Modifications to judgment

In his second issue and in the State's cross-point, the parties request modification of the judgment. Appellant contends the judgment should be modified to reflect the correct statute applicable to the deadly weapon finding. The State agrees that the "special findings" section of the judgment should be modified to reflect that article 42A.054(c), Texas Code of Criminal Procedure, is the applicable statute.

In a cross-point, the State requests modification of the judgment to correctly reflect appellant's plea and the jury's finding to the enhancement paragraph in the charge. The record reflects that appellant entered a plea of "not true" to the enhancement allegation and the jury found the enhancement allegation to be true. The judgment, however, reflects "N/A" as appellant's plea to the enhancement paragraph and "N/A" as the finding on the first enhancement paragraph. The State contends the judgment should be modified to read as follows: "1st Enhancement Paragraph: Pleaded Not True," and "Findings on 1st Enhancement Paragraph: True."

This Court has the power to correct and reform the trial court's judgment to make the record speak the truth when, as here, it has the necessary information to do

–11–

so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). We reform the judgment as follows:

1.    We modify the "special findings" section of the judgment to reflect that the statute applicable to the deadly weapon finding is article 42A.054(c), Texas Code of Criminal Procedure, and

2.    We modify the enhancements section of the judgment to read as follows: "1st Enhancement Paragraph: Pleaded Not True," and "Findings on 1st Enhancement Paragraph: True."

## CONCLUSION

As modified, the trial court's judgment is affirmed.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230005F.U05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DESTIN BAILEY, Appellant

No. 05-23-00005-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas Trial Court Cause No. F20-51637-M. Opinion delivered by Justice Breedlove. Justices Garcia and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "special findings" section of the judgment is reformed to reflect that the statute applicable to the deadly weapon finding is article 42A.054(c), Texas Code of Criminal Procedure, and

The "enhancements" section of the judgment is reformed to read as follows: "1st Enhancement Paragraph: Pleaded Not True," and "Findings on 1st Enhancement Paragraph: True."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered June 7, 2024

–13–